# EXHIBIT A

**Complaint Filed February 21, 2025
(Case No. CV25-00464)**

FILED
Electronically
CV25-00464
2025-02-21 11:48:44 AM
Alicia L. Lerud
Clerk of the Court
Transaction # 10851586 : sacordag

$1425
John K. Gallagher, Esq.
Nevada State Bar No. 956
Patrick H. Gallagher, Esq.
Nevada State Bar No. 14875
GUILD, GALLAGHER & FULLER, LTD.
100 W. Liberty St., Ste. 800
P.O. Box 2838
Reno, NV 89505
Tele:   775-786-2366
Fax:    775-322-9105
Email: *jgallagher@ggfltd.com*
        *pgallagher@ggfltd.com*

*Attorneys for Plaintiff Neil C. Krutz*

## IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

## IN AND FOR THE COUNTY OF WASHOE

| | |
|---|---|
| NEIL C. KRUTZ, an individual; | Case No. _____ |
| Plaintiff, | Dept. _____ |
| v. | **COMPLAINT** |
| THE CITY OF SPARKS, a political subdivision of the State of Nevada; ED LAWSON, individually and as Mayor of the City of Sparks; DONALD ABBOTT, individually and as Councilmember for the City of Sparks; DIAN VANDERWELL, individually and as Councilmember for the City of Sparks; PAUL ANDERSON, individually and as Councilmember for the City of Sparks; CHARLENE BYBEE, individually and as Councilmember for the City of Sparks; KRISTOPHER DAHIR, individually and as Councilmember for the City of Sparks; and DOES I-X, inclusive, | [Exempt from Court Annexed Arbitration Program – in excess of $50,000.00 – N.A.R. 5(b)(1)(C)] |
| Defendants. | |

COMES NOW, Plaintiff NEIL C. KRUTZ, an individual ("Krutz") by and through his

counsel of record John K. Gallagher and Patrick H. Gallagher of Guild, Gallagher & Fuller, Ltd.,

and as for its Complaint against Defendant THE CITY OF SPARKS, a political subdivision of the

State of Nevada (hereinafter "Sparks"); ED LAWSON, individually and as Mayor of the City of

Sparks (hereinafter the "Mayor"); DONALD ABBOTT, individually and as Councilmember for the

1  City of Sparks (hereinafter "Abbott"); DIAN VANDERWELL, individually and as Councilmember

2  for the City of Sparks (hereinafter "VanderWell"); PAUL ANDERSON, individually and as

3  Councilmember for the City of Sparks (hereinafter "Anderson"); CHARLENE BYBEE,

4  individually and as Councilmember for the City of Sparks (hereinafter "Bybee"); KRISTOPHER

5  DAHIR, individually and as Councilmember for the City of Sparks (hereinafter "Dahir")

6  (hereinafter collectively referred to as "Sparks City Council"); and DOES I-X, inclusive, alleges as

7  follows:

8                                     PARTIES

9        1.      Plaintiff Krutz is, and at all times relevant hereto was, a resident of the County of

10  Washoe, State of Nevada.

11        2.      Defendant THE CITY OF SPARKS is, and at all times relevant hereto was, a

12  political subdivision and municipal corporation, located in the county of Washoe, State of Nevada.

13        3.      Defendant ED LAWSON is, and at all times relevant hereto was, the Mayor of the

14  City of Sparks.

15        4.      Defendant DONALD ABBOTT is, and at all times relevant hereto was, the Sparks

16  City Councilmember representing Ward 1 for Sparks.

17        5.      Defendant DIAN VANDERWELL is, and at all times relevant hereto was, the Sparks

18  City Councilmember representing Ward 2 for Sparks.

19        6.      Defendant PAUL ANDERSON is, and at all times relevant hereto was, the Sparks

20  City Councilmember representing Ward 3 for Sparks.

21        7.      Defendant CHARLENE BYBEE is, and at all times relevant hereto was, the Sparks

22  City Councilmember representing Ward 4 for Sparks.

23        8.      Defendant KRISTOPHER DAHIR was, at all times relevant hereto, the Sparks City

24  Councilmember representing Ward 5 for Sparks.

25        9.      The true names and capacities of the defendants named herein as DOES I through X,

26  inclusive, whether individual, corporate, associate, agent, representative, or otherwise, are presently

27  unknown to Krutz, who therefore sues the said defendants by such fictitious names; and when the

28  true names and capacities of DOES I through X, inclusive, are discovered, Krutz will seek leave to

1  amend this Complaint to substitute the true names and identities of the said defendants. Krutz is

2  informed, believes and, therefore, alleges, that the defendants so designated herein are responsible

3  in some manner for the events and occurrences contained in this action.

4      10.     Upon information and belief, Krutz alleges that all named defendants were at all

5  times herein mentioned, and now are, the agents and/or employees of all of the other named

6  defendants and were at all times herein mentioned, and now are, acting within the course of said

7  agency and/or employment.

8      11.     DOES I through X, inclusive, are liable to Krutz as hereinafter set forth.

9                          JURISDICTION AND VENUE

10     12.     Venue is proper in the Second Judicial District, Washoe County, under NRS 13.010

11  *et seq.* because defendants are located in Washoe County, the acts or omissions set forth below all

12  occurred in Washoe County and the Contract between Krutz and Sparks provides that jurisdiction

13  is proper in the County of Washoe, State of Nevada at Section 13(I).

14                          GENERAL ALLEGATIONS

15     13.     On March 15, 2019 Sparks and Krutz entered into a contract where Krutz would

16  become the City Manager of Sparks ("Contract").

17     14.     The initial term of the Contract ran through June 30, 2022.

18     15.     Section 2 of the Contract sets forth the Salary and Longevity pay and provided an

19  annual base salary of $223,100.80 per year, longevity pay in the amount of SEVEN THOUSAND

20  FIVE HUNDRED DOLLARS ($7,500.00) per year, and an annual base salary Cost of Living

21  Adjustment (COLA), among other things.

22     16.     Section 7 of the Contract sets forth the termination provisions of the Contract.

23     17.     Section 7 allows for the termination of the Contract for cause and without cause as

24  follows:

25      A.  Termination Without Cause. At any time, CITY, by appropriate City
26          Council action, or MANAGER, individually, may terminate
            MANAGER's employment as City Manager without cause, by
27          providing ninety (90) days advance written notice (may be referred to
            as "Termination Without Cause"). During such ninety (90) day period,
28          the City Council, in their sole discretion, may determine if MANAGER
            is to maintain regular business hours with the CITY or if he should be

3
COMPLAINT

1    placed on leave with pay.

2    B. <u>Termination for Cause.</u> Notwithstanding any other terms or conditions
     of this Agreement, at any time and without prior notice, CITY, acting
3    through City Council, may terminate MANAGER's employment as
     City Manager for cause as is defined hereafter. A "Termination for
4    Cause" shall mean termination of employment because of any of the
     following: "Cause" includes, but is not limited to: (i) breach of any
5    provision in this agreement, (ii) violation of any City of Sparks
     resolution, ordinance, (iii) violation of any county, state or federal
6    constitution, charter, ordinance, statute or regulation (except minor
     traffic or parking violations), (iv) commission of any act of dishonesty
7    (including but not limited to misrepresentation, fraud, false statements
     made under oath, false statements made on any official report, false
8    statements made during any administrative or governmental proceeding,
     false or misleading statements made on any employment application or
9    during interviews leading to employment, any act of misappropriation
     or failure to account for public funds, or commission of any act of moral
10   turpitude or any act which would tend to derogate the public confidence
     in the government of the City of Sparks should MANAGER remain in
11   the Position, (v) neglect of duties (including but not limited to excessive
     absences, failure to exercise the care, skill and diligence of a reasonably
12   prudent executive responsible for administering public programs and
     safeguarding public funds).

13

14   18.    The Contract also provides that "[t]he City Council, individually and collectively,

15   shall use their best effort to refer in a timely manner substantive criticisms, complaints and

16   suggestions called to their attention to the MANAGER for study and/or appropriate action.

17   19.    In March 2019, Krutz asked the Community Services Department of Sparks to track

18   time its employees spent answering City Council member questions related to constituent concerns

19   and complaints in their wards ("Study"). The Community Services Department employs the staff

20   which processes development approvals as well as public works approvals.

21   20.    The results of the Study showed Abbott was using most staff time at twenty (20)

22   hours per month, Dahir with the second most time at approximately eight (8) hours per month and

23   Bybee with the third most time at approximately five (5) hours per month.

24   21.    After consulting with Mayor Ron Smith, Krutz and Mayor Smith decided to share

25   the results of the Study with all five Council Members (Ed Lawson, Abbott, Anderson, Bybee and

26   Dahir) and relaying that time spent by staff on constituent issues adversely impacted the staff's

27   ability to work on items they were charged with completing.

28   22.    Abbott, Dahir and Bybee all confronted Krutz and suggested he was "trying to

1  embarrass them in front of their peers." Krutz responded by stating embarrassment was not his goal,

2  he just wanted transparent sharing of information that impacts how public resources are allocated.

3      23.    Upon information and belief Krutz forwarded similar information to City Council

4  Members on one other occasion before Mayor Ron Smith passed away.

5      24.    Subsequently, the Contract was amended on May 26, 2020, and extended the term

6  of the Contract for an additional year to June 30, 2023 ("First Amendment").

7      25.    The tracking of Council Members use of staff time ceased on or about September

8  2020 when Mayor Ed Lawson was sworn in as Mayor of Sparks.

9      26.    The Contract was, again, amended on January 11, 2021 ("Second Amendment") to

10  reinstate a voluntary Covid-19 related pay reduction, award a five percent merit increase, and

11  provide a 2.8 percent cost of living adjustment.

12      27.    Upon information and belief, in the Spring of 2021, Council members Bybee and

13  Dahir were planning to attend a National League of Cities event in Washington, D.C. The travel

14  arrangements for Dahir and Bybee were arranged through Krutz's assistant.

15      28.    Dahir advised he would only fly on Southwest Airlines during a very narrow window

16  for flight scheduling and Bybee would only fly on American Airlines and picked specific flights for

17  the trip. Both Dahir and Bybee requested more costly flights than what was available during the

18  time period requested.

19      29.    As part of his assigned duties, Krutz reviewed travel plans and costs to monitor

20  Sparks elected officials expenses. At Krutz's direction, his assistant questioned both Dahir and

21  Bybee why the City should be expending additional funds when less costly flights were available to

22  each of them.

23      30.    Krutz was advised Dahir had a friends fly free benefit from Southwest Airlines and

24  was planning on taking his son along on the trip and Bybee insisted she fly on American Airlines

25  because she had been a flight attendant there for 42 years.

26      31.    Krutz gave Dahir and Bybee the option to pay the difference between their choices

27  and the more reasonable less expensive cost flight or rebook the travel.

28      32.    Dahir accepted rebooking on a different airline and his son did not take the trip with

1  him. Bybee paid the difference in flights and remained on American Airlines.

2        33.    Both Dahir and Bybee were upset Krutz questioned them about their travel

3  arrangements.

4        34.    The Contract was, again, amended on June 23, 2021, increasing Krutz's salary by

5  one and seventeen hundredths (1.17%) of a percent, taking Krutz's salary to the top of the job

6  classification range, and extending the term of the Contract for an additional year to June 30, 2024

7  ("Third Amendment").

8        35.    On May 23, 2022, the Contract was amended for a fourth time which extended

9  Krutz's employment as the City Manager of Sparks through June 30, 2025 ("Fourth Amendment").

10       36.    For the final time, on July 11, 2022, the Contract was amended for a fifth time ("Fifth

11  Amendment") to provide an inflation related salary allowance.

12       37.    On November 28, 2022, the City Council approved the employment contract for

13  Mark Lawson as Sparks' new fire chief.

14       38.    On Friday, December 2, 2022, Wes Duncan, Sparks City Attorney, spoke to an

15  employee of the Nevada Attorney General's Office and learned that the Nevada Attorney General's

16  Office was prepared to file a felony level criminal complaint against Mark Lawson in Sparks Justice

17  Court (possibly as early as next week).

18       39.    Mr. Duncan confirmed this conversation in an email to the Nevada Attorney

19  General's office which stated:

> Thank you for taking my call this afternoon. To confirm our conversation, after a complete investigation Chief Mark Lawson, City of Sparks, will have a felony level criminal complaint filed in Sparks Justice Court against him by the Nevada Attorney General's Office (possibly as early as next week) for instances relating to the introduction of steroids, i.e., controlled substances, into a Nevada Corrections Facility. Although the charges may not be finalized, your office is contemplating potential felony charges that could range from category B to category E felonies. (Sales of Controlled Substance, Conspiracy to Violate the Controlled Substance, Act, Possession of a Controlled Substance with Intent to Distribute, Furnishing Controlled Substance to State Prisoner etc.)

> Please let me know if I have missed anything.

27       40.    That same day, Mr. Duncan, wrote an email to Krutz and Alyson McCormick,

28  Assistant Sparks City Manager, which discussed Mark Lawson's employment as the Sparks Fire

1 | Chief and provided the following:

> Bottom line, although there is not a criminal indictment or complaint yet filed, there will be one either next week or the week after for felony level offenses. Based on this information, I [Wes Duncan] believe he should/can be terminated for cause under Section 6. Paragraph D, for act of "moral turpitude" or "any act that would tend to diminish public confidence in the government of the CITY should EMPLOYEE remain in the position." Felony level charges certainly rise to that clause in his employment contract.
>
> I also see that we can terminate him for not passing a background check. Has his background been completed?
>
> One final consideration, you may want to have him come in and ask for his resignation based on the information you have and see if he will tender a letter of resignation. Although we obviously have cause, this puts it back on the employee to do the right thing as well, and the city can state that we asked for his resignation based on the information we learned.

41.     Before requesting a meeting with Mark Lawson, Krutz advised Mayor Ed Lawson that he would be requesting the resignation of Mark Lawson at a scheduled meeting. Mayor Lawson expressed no disagreement with Krutz's planned course of action.

42.     Following the advice of the City Attorney, Wes Duncan, on Monday, December 5, 2022, Krutz requested a meeting with Mark Lawson to request his resignation. During the meeting Mark Lawson resigned his position as Sparks Fire Chief, which Krutz accepted on behalf of Sparks.

43.     In attendance at the meeting with Lawson was Alyson McCormick, Assistant Sparks City Manager, who witnessed Mark Lawson's resignation.

44.     Immediately following the meeting with Mark Lawson and Alyson McCormick, Krutz advised Abbott, Anderson, Bybee, VanderWell and Dahir of what occurred at the meeting and that Mark Lawson had tendered his resignation as Fire Chief of the City of Sparks.

45.     Following his resignation, Mark Lawson contacted the Sparks Police Chief, Chris Crawforth, and requested assistance with getting his job back.

46.     On December 5, 2022, Krutz recorded a video statement regarding Mark Lawson's resignation. The video was only provided to the City of Sparks Fire Department Employees through their City of Sparks email addresses, and Mayor Lawson, Abbott, VanderWell, Anderson, Bybee, Dahir, Assistant City Manager Alyson McCormick and Assistant City Manager John Martini. The video statement was not publicly disseminated.

47.    Upon information and belief, the video statement was then leaked to the public by an unknown person who was sent the emailed video link regarding Mark Lawson's resignation. Upon information and belief the City of Sparks has never conducted an investigation into who leaked the video to the media.

48.    On or about December 9, 2022, the State of Nevada filed a criminal complaint against Mark Lawson alleging four (4) felony drug charges.

49.    During the March 13, 2023, City Council meeting, Councilmember Dian VanderWell requested that an item be placed on the City Council's agenda for May 8, 2023, to consider termination of Krutz's contract.

50.    Upon information and belief VanderWell and Mark Lawson are close personal friends, having known each other for years.

51.    Sparks and all City Council Members, including the Mayor, were aware that Wes Duncan advised Krutz to ask for Mark Lawson's resignation and that his employment should/could be terminated for cause. In addition, all City Council members were aware the Mayor knew about what was taking place and that the Mayor did not express any disagreement regarding Wes Duncan's advice and direction given to Krutz.

52.    On March 14, 2023, Mark Lawson sued Sparks and Krutz.

53.    On April 3, 2023, Krutz and Mayor Lawson scheduled a meeting with Councilmember VanderWell to discuss Krutz's employment performance and to seek her input on where he should focus in the upcoming year, and her request to place consideration for the termination of Krutz's Contract on the City Council agenda.

54.    In the meeting, Councilmember VanderWell refused to engage Krutz, stating she was not interested in a conversation about the future and told Krutz he should "retire or resign."

55.    Krutz understood VanderWell's comments regarding "retiring or resigning" to be a reference to his age, that he was too old to perform his duties as City Manager and that he should retire or resign.

56.    On or about the same time, upon information and belief, Councilmember Dahir was soliciting feedback from the Human Resources Director and Chief of Police whether Krutz was

1   difficult to work with and if Krutz was a "tyrant." Councilmember Dahir also requested that the

2   Human Resources Director not let anyone know he had met with her or what they had discussed.

3       57.    On April 5, 2023, Krutz conducted in person meetings with Councilmembers,

4   Anderson, Bybee, Dahir and Abbott.

5       58.    During Dahir's April 5, 2023, meeting with Krutz, Dahir stated he was still concerned

6   about tracking the use of staff time by City Council Members and asked Krutz "why [Krutz] was

7   still tracking Council member use of staff time?" Dahir seemed surprised to learn that the tracking

8   had been abandoned years prior to when Mayor Ed Lawson took over the position of Mayor.

9       59.    During Bybee's April 5, 2023, meeting with Krutz, Bybee raised the travel issue

10  again, stating that Krutz micromanaged the City and she did not understand how Krutz found time

11  to do so, referencing her exchange with Krutz regarding travel in the Spring of 2021. Bybee also

12  stated Krutz had questioned her credibility as a fiscal conservative and felt that Krutz was wrong to

13  do so. She said Krutz should have blindly trusted that Bybee had the City's interest at heart and let

14  her travel go as she desired.

15      60.    On or about April of 2023 Krutz also learned of the existence of a negatively biased

16  survey that was circulated anonymously amongst City of Sparks employees seeking input on Krutz's

17  leadership.

18      61.    Krutz asked Mayor Lawson to investigate the source of the survey because he was

19  being harassed but the Mayor and the City of Sparks never followed up on the request and refused

20  to investigate the source of the "anonymous" survey.

21      62.    On April 24, 2023, Krutz was served with a "Notice of meeting of the City Council

22  to consider [his] character, alleged misconduct, professional competence, or health" in connection

23  with his performance evaluation.

24      63.    The actions by Defendants in their efforts to improperly terminate Krutz's contract

25  required Krutz to retain the services of Guild, Gallagher & Fuller, Ltd which caused Krutz to incur

26  expenses in the form of attorney's fees.

27      64.    On April 13, 2023, Abbott submitted his City Manager Performance Evaluation for

28  the time period of May 2022 to May 2023, which gave Krutz a 2.714 rating.

65.     On April 16, 2023, Anderson submitted his City Manager Performance Evaluation for the time period of May 2022 to May 2023, which gave Krutz a 3.57 rating.

66.     On April 17, 2023, VanderWell submitted her City Manager Performance Evaluation for the time period of May 2022 to May 2023, which gave Krutz a 0.0 rating. VanderWell submitted her evaluation with no comments regarding Krutz's performance and areas for improvement. At the end of the survey she submitted general comments about "[w]hat [she] would like to see in a City Manager" and used Krutz's performance evaluation as a basis to assert what skills and attributes she wanted to see in a City Manager in an apparent effort to suggest characteristics for Krutz's replacement.

67.     The same day, on April 17, 2023, Bybee also submitted her City Manager Performance Evaluation for the time period of May 2022 to May 2023, which gave Krutz a 1.29 rating and provided only generalities as to why certain ratings were given.

68.     Upon information and belief Councilmembers Bybee and VanderWell conspired to give Krutz excessively low performance evaluation scores to negatively impact Krutz's performance review to cause his termination.

69.     On April 18, 2023, Dahir submitted his City Manager Performance Evaluation for the time period of May 2022 to May 2023, which gave Krutz a 3.43 rating.

70.     During the same April 2023 time period, Mayor Lawson submitted his City Manager Performance Evaluation for the time period of May 2022 to May 2023, which gave Krutz a 4.0 rating.

71.     On May 1, 2023, Sparks filed a Motion to Dismiss the *Mark Lawson v. City of Sparks and Neil Krutz* matter, Case No.: CV23-00458 and asserted Krutz's statements in the video are true: "Mr. Krutz's statements [in the video] ***were not false*** and cannot serve as a basis for a defamation claim." (emphasis added) City of Sparks Motion to Dismiss at 12:24-25. "The statements made by Mr. Krutz about Mr. Lawson are true or substantially true." City of Sparks Motion to Dismiss 13:3-4. "Here, the statements made by Krutz are true." City of Sparks Motion to Dismiss at 14:15.

72.     That same day, Sparks filed a special Anti-Slapp Motion to Dismiss the *Mark Lawson v. City of Sparks and Neil Krutz* matter, Case No.: CV23-00458 whereby it again asserted the same

1  position stated in its Motion to Dismiss, that Krutz's statements in the video are true: "The gist or

2  the sting of the statement made by Mr. Krutz is true." Anti-Slapp Motion to Dismiss at 10:10-11.

3      73.    On May 2, 2023, Krutz was provided the performance evaluations from Sparks

4  Human Resources.

5      74.    During the previous three (3) performance evaluations (2020-2022) Krutz was never

6  given negative feedback but instead was commended on his leadership style and given salary

7  increases and extensions of his contract.

8      75.    On May 26, 2020, Krutz's Annual Performance Review for the time period of May

9  2019 to May 2020 was conducted during the Sparks City Council Meeting. In the meeting, "Council

10  commended Mr. Krutz's performance to date, expressing gratitude for his leadership style and for

11  allowing full transparency and open communication with both his team and with Council. Council

12  also commended Mr. Krutz's realignment of the management structure, and increased flexibility in

13  the ways the Management Team interacts with Council in the decision-making process. Mr. Krutz

14  voluntarily requested to forego the 2.8% Cost of Living Allowance and took a five percent (5%) pay

15  cut for the following year due to decreasing City revenue resulting from the COVID-19 Pandemic.

16  At this time the Sparks City Council consisted of Mayor Ron Smith and Council Members Ed

17  Lawson, Abbott, Anderson, Bybee and Dahir, voted unanimously to extend Krutz's contract by one

18  (1) year.

19      76.    On June 14, 2021, Krutz's Annual Performance review for the time period of May

20  2020 to May 2021 was conducted at the Sparks City Council Meeting. In that meeting, the "Mayor

21  and Council praised Mr. Krutz's leadership during the pandemic and the efforts of executive staff."

22  The City Council approved a merit increase of 1.17% to his salary. At this time, the Sparks City

23  Council consisted of Mayor Ed Lawson, and Councilmembers Abbott, Anderson, Bybee, Dahir and

24  VanderWell who voted unanimously for Krutz's salary increase.

25      77.    Starting in May of 2022 the City of Sparks went to a Performance Evaluation and

26  rating system. The Performance Evaluations are based on seven (7) categories, rated from 0-6. The

27  average score is taken and performance rating is given for the City Manager. A rating of 6 is

28  Outstanding and far exceeds expectations, a rating of 5 is excellent and exceeds expectations, a rating

1  of 4 is very good and meets all expectations; a rating of 3 is good and meets all expectations, a rating

2  of 2 is fair and meets most expectations; a rating of 1 is poor and fails to meet most expectations;

3  and a rating of 0 is unsatisfactory and fails to meet all expectations.

4      78.    For the time period of May 2021- May 2022, Krutz's average rating for his

5  performance evaluation was a 4.3 (Very Good and meets all expectations). Mayor Lawson, Abbott,

6  VanderWell, Anderson, Bybee and Dahir were members of the Sparks City Council during this time

7  period.

8      79.    On May 4, 2023, Councilmember VanderWell gave an interview to the Reno-Gazette

9  Journal where she stated, "I think by his [Krutz Krutz's] management missteps, he's opened us up

10 for a huge lawsuit . . ." and "this [the Mark Lawson Resignation] was an HR issue and should have

11 been fully handled by HR and never discussed . . .[i]t's not open for public consumption." These

12 statements were made by Councilmember VanderWell notwithstanding that she had been briefed on

13 the Lawson matter by Krutz, the Mayor and Duncan and was fully aware of the advice provided to

14 Krutz by Duncan, the non disagreement by Mayor Lawson and the true facts of the matter.

15     80.    On May 8, 2023, the Sparks City Council held a meeting to consider Krutz's

16 performance evaluations and the potential termination of his Contract.

17     81.    During the May 8, 2023 City Council meeting discussing Krutz's performance

18 evaluations, Councilmember VanderWell stated, "I no longer trust or do have confidence that our

19 City Manager has the best interests of our City, its employees, or its citizens at this time [sic] . . . ."

20 and "I think a lot of things possible could have been handled a lot differently than they were and I

21 believe that this is why we are here today" and "Yes, I do believe we all make mistakes, but when

22 we have been in a management position for over 25 years, I think we really need to look at those

23 mistakes as they come forward."

24     82.    During that meeting Councilmember Bybee also expressed there was a "lack of trust"

25 in leadership based on the performance evaluation results which she and Councilwoman VanderWell

26 negatively impacted and skewed.

27     83.    During the May 8, 2023 meeting, discussing Krutz's possible termination,

28 Councilmember Dahir stated, "I don't believe there is a place for [termination] with cause, I don't

1    see that at all for me. . . ."

2        84.    During the May 8, 2023, Sparks City Council Meeting, the City Council voted down

3    the attempt to terminate Krutz's Contract without cause, with the tie breaking vote coming from

4    Mayor Lawson.

5        85.    At the conclusion of the meeting, Councilmember VanderWell requested another

6    agenda item for the June 12, 2023, Sparks City Council Meeting seeking "an independent

7    investigation into survey results, leadership, employee relations and anything else to do with the City

8    Manager and I would like that to be independent please."

9        86.    Upon information and belief, no complaints regarding Krutz as City Manager were

10    received by Sparks Human Resources prior to VanderWell requesting an "investigation" into Krutz's

11    conduct. Upon information and belief, VanderWell's efforts to solicit negative public comments

12    regarding Krutz's employment was an attempt to circumvent Sparks' established Human Resource

13    policy regarding employee human resource complaints.

14        87.    At the June 12, 2023, Sparks City Council meeting under Agenda Item 9.15

15    (consideration, discussion, and possible action regarding a request for an independent investigation

16    into survey results, leadership, employee relations, and any other items relating to the City Manager)

17    VanderWell stated she requested the agenda item to better understand how to start an investigation

18    into "potentially toxic leadership, negative employee survey results, employee morale, gender bias

19    and whether the City Manager is exercising care, skill and diligence of a reasonably prudent

20    executive responsible for leading our city" because she "believe[s] that [she] cannot stand by and do

21    anything else after [she] [has] been made aware of some potential issues by our current and former

22    employees."

23        88.    During the June 12, 2023, Sparks City Council meeting, Council Members discussed

24    the possibility of people coming forward to file HR complaints against Krutz, VanderWell stated,

25    "the unfortunate part is that we have employees here that do not feel comfortable doing that [going

26    to HR or the Mayor] . . . so my concern is . . . yes, I need them to, I have encouraged them to but I

27    am trying to make it so that our employees are being heard. . ." VanderWell's statements were

28    intended to bypass the Sparks Human Resources policy and invite Human Resources Complaints to

1  be filed against Krutz, contrary to Sparks' policies and in furtherance of her effort and that of others

2  to unlawfully terminate Krutz.

3       89.    VanderWell made these comments in public, in violation of the City of Sparks

4  Human Resources policy notwithstanding the fact that no complaints had been filed against Krutz

5  as City Manager for the City of Sparks.

6       90.    The Sparks Human Resources Policy requires that "[e]mployees authorized by the

7  City to receive and investigate complaints *are required to maintain confidentiality. . . .*"

8       91.    At the conclusion of Agenda Item 9.15 of the June 12, 2023 City Council Meeting,

9  Abbott made a motion to "direct the hiring of a third-party investigator to work with Human

10  Resources to initiate a complaint-driven investigation into the City Manager and the performance of

11  his duties under his contract as it relates to toxic leadership, negative employee survey results,

12  employee morale, gender bias, or whether the City Manager is exercising the care, skill, and

13  diligence of a reasonably prudent executive." Councilman Abbott also made these statements

14  knowing there had been no complaints filed with Sparks against Krutz. The Motion was seconded

15  by VanderWell and passed.

16       92.    On July 18, 2023, the Sparks City Council posted its agenda for the July 24, 2023

17  City Council Meeting and included Agenda Item 9.4 which stated, "consideration, discussion, and

18  possible approval of a retainer agreement with Debra L. Schroeder, JD, AWI-CH, to provide a

19  complaint-based investigation into the City Manager and the performance of his duties under the

20  contract . . .(For Possible Action)." The agenda item brief stated, "[t]he cost of the investigation

21  cannot be determined at this time because Council asked for a solicitation of complaints, and the

22  volume and nature of such complaints is not currently knowable." The agenda item also included a

23  scope of the investigation to be "[t]he desire expressed is for employees, former employees, and

24  potentially other people outside of the City who have experience with the City Manager, to be able

25  to initiate a complaint directly through the investigator."

26       93.    On July 19, 2023, Krutz filed a formal Human Resources Complaint against

27  VanderWell, Bybee and Abbott for age discrimination, creating a hostile work environment and for

28  retaliation.

94.   That same day, Krutz sent a Preservation Letter to Sparks indicating it "must take all steps to preserve all material, documents, communications and electronic media" in Sparks' possession custody and control related in any way to Krutz's Human Resources complaint.

95.   On July 19, 2023, Krutz also sent Sparks a FOIA request.

96.   On July 20, 2023, the Human Resources Director sent Krutz a letter which advised "[u]nder Administrative Rule 3.010, retaliation against any individual who participates in an investigation is strictly prohibited. If you [Krutz] believe that you or any other person is being subjected to retaliation, please contact Human Resources."

97.   On August 25, 2023, the Sparks City Council held a special meeting to consider the approvement of amendment No. 6 to Mr. Krutz's employment contract. At the end of this meeting, Mayor Ed Lawson, being fully aware of Krutz's pending Human Resources Complaint, retaliated against Mr. Krutz by placing on the agenda for the next scheduled Sparks City Council Meeting or a special meeting, whichever came first, consideration for "termination of Mr. Krutz's contract."

98.   On Monday, August 28, 2023, Krutz sent a letter to Sparks Human Resources complaining of the retaliatory conduct by Mayor Lawson.

99.   The Sparks Human Resources Policy strictly prohibits retaliation of any kind stating, "[t]he City will not tolerate retaliation against any individual who reports discrimination or harassment, testifies, assists, or participates in any manner in an investigation, proceeding or hearing, regardless of the outcome of the complaint."

100.   On that same day, notwithstanding Krutz's pending Human Resources Complaint and claims of retaliation, Krutz was placed on administrative leave through September 5, 2023, and served with a Notice of Special Meeting on September 5, 2023, to consider Krutz's alleged misconduct, professional competence, or health which could potentially lead to his termination.

101.   On August 29, 2023, Krutz sent a follow up letter to Sparks regarding his preservation letter of July 19, 2023.

102.   After placing Krutz on Administrative leave, Sparks locked Krutz out of the City's computer systems, thereby denying him access and depriving him of his ability to perform his job duties.

1        103.   On August 31, 2023, Krutz sent another letter to Sparks Human Resources

2  complaining of further retaliatory action taken against Krutz.

3        104.   On September 5, 2023, Sparks City Council held their special meeting and terminated

4  Krutz's Contract for cause, based upon the following reasons which were read from a prepared

5  statement by Councilman Anderson:

> I [Mr. Paul Anderson] propose that we terminate the City Manager for cause. Using the following sections: section 7(d), termination for cause includes, but is not limited to, (1) breach of any provision of this agreement, (2) violation of any city council resolution or ordinance, (3) violation of any county, state or federal constitutional charter, statute, ordinance, or regulation, except minor traffic or parking violations, (4) commission of any act of dishonesty or commission of any act of moral turpitude or any act which would tend to derogate public confidence in government in the City of Sparks should the manager remain in position; (6) neglect of duties, including but not limited to, excessive absences, failure to exercise the care skill and diligence of a reasonably prudent executive responsible for administering public programs and safeguarding public funds. The points I'd [Mr. Paul Anderson] like to make under section 7(d) is, Mr. Krutz handling of the Fire Chief without properly consulting the City Council, Human Resources, or legal counsel, constitutes neglect of duties and failure to exercise the care, skill and diligence of a reasonably prudent executive. Any reasonably prudent executive administering a public program would have known to consult counsel, human resources, or legal before engaging in a high-profile employment action of a city employee. Number 2: Mr. Krutz's decision to post an unauthorized online video about the firing of the fire chief has embroiled the city in expensive litigation with potential exposure to the city. Mr. Krutz's decision constitutes neglect of duties and failure to exercise the care skill and diligence of a reasonably prudent executive. Any reasonably prudent executive administering a public program would have or should have known not to post a video about an employment decision to open the city to litigation and potential liability. Number 3: Both the manner in which Mr. Krutz terminated the fire chief and his online public statements are action which would tend to derogate the public confidence in the government of the City of Sparks under section 7(d). Number 4: Mr. Krutz is creating an uncomfortable working environment through intimidation and a culture of fear. In doing so, he has decreased the productivity and service of the city employees. Therefore, he has neglected his duties and failed to exercise the care, skill and diligence of a reasonably prudent executive. Number five: the manner in which Mr. Krutz had dealt with the City employees and his lack of leadership style tends to derogate public confidence in the City of Sparks under section 7(d).
>
> The next point is section 1(a), under duties. As a chief executive officer/employer the Manager shall faithfully perform the duties as described in the job description as set forth in employer's charter and/or ordinances. This agreement and as may be lawfully assigned by the City and shall comply with all lawful governing body directives, state and federal law, city policies and rules and ordinances that may exist or may hereinafter be amended. Under this item, number 1: Mr. Krutz handling of the fire chief without properly consulting the City council, human resources or legal

counsel, failed to comply with city policies rules and governing body directives under section 1(a). Number 2: Mr. Krutz posting of an unauthorized online video which has prompted litigation and embarrassment, failed to comply with the city policies, rules and governing body directives under section 1(a).

The next point, section 13(b). City council, individually and collectively, shall use their best efforts to refer, in a timely manner, substantive criticisms, complaints and suggestions called to their attention of the City Manager for study and/or appropriate action. And for these reasons, number 1: in accordance with section 13(b) each council member previously expressed performance problems to Mr. Krutz in individual meetings. Number 2: Since that time Mr. Krutz has not improved on those individual actions and his performance has not improved as previously represented and expected. Number 3: all of these actions have happened in open and have been observed firsthand by city council members. Number 4: without revealing the contents of the communication, city council members have communicated with outside legal counsel and in good faith believe that these actions constitute cause under existing law and legal precedence and therefore I suggest that we as a council take action today in earnest and good faith belief that this would be in the best interests of the city of sparks and for the citizens and employees.

105.    The Sparks City Council voted to terminate Krutz's contract for cause on September 5, 2023.

106.    On October 5, 2023, Krutz sent an updated preservation letter to the City of Sparks requesting the City "take all steps necessary and appropriate to identify, retain and preserve all material, documents, communications and electronic media in [the City's] possession, custody or control related in any way to the Fire Chief Lawson Resignation, Mr. Krutz's initial Human Resources Complaint, Mr. Krutz's second and third Human Resources Complaints for retaliation, any alleged basis for termination of Mr. Krutz's employment contract, any communications with Rebecca Bruch, Esq. or any other investigator tasked with investigating Mr. Krutz's Human Resources complaints and the eventual unlawful termination of Mr. Krutz's employment contract."

107.    On October 11, 2023, Krutz sent a second FOIA request to Sparks.

108.    To date Sparks has not complied with either FOIA request from Krutz.

109.    On February 2, 2024, the City of Sparks, Krutz and Mark Lawson entered into a settlement agreement, which Mark Lawson released Krutz and the City of Sparks from all "known and unknown past, present, and future actions, causes of action . . . in any way connected with, arising out of, concerning, or related to the Contract, Lawson's employment with the City, the

Meeting, the Announcement Video, the Lawsuit, any claims that were or could have been brought in the Lawsuit, the Appeal, and/or, negotiation and execution of this Agreement."

110.   On February 6, 2024, the State of Nevada re-filed charges against Mark Lawson for one (1) count of Conspiracy to Violate the Uniform Controlled Substances Act (a category "C" felony); one count of possession of a controlled substance (a category "C" felony); and one count of possession of a controlled substance for purpose of sale (a category "D" felony).

111.   On February 12, 2024, the Sparks City Council voted unanimously to approve the settlement agreement with Mark Lawson and agreed to pay him $381,000.00.

112.   On April 7, 2024, Krutz filed a Complaint with the Nevada Equal Rights Commission ("NERC").

113.   On August 18, 2024, Mark Lawson pleaded Nolo Contendere to one (1) gross misdemeanor offense of Conspiracy to Possess a Drug that may not be introduced into interstate commerce.

114.   On November 1, 2024, Krutz requested a right to sue letter from NERC.

115.   On December 17, 2024, Krutz received a right to sue letter from NERC.

<u>FIRST CLAIM FOR RELIEF</u>
(Breach of Contract – Against Sparks)

116.   Krutz re-alleges and incorporates by reference paragraphs 1 through 115 of this Complaint as if set forth fully herein.

117.   The Employment Agreement and all amendments thereto between Krutz and the City of Sparks constitute valid and enforceable contracts in accordance with their terms.

118.   Krutz and Sparks are parties to the Contract.

119.   The City of Sparks offered employment to Krutz under the contract which Krutz accepted.

120.   Krutz has performed all of the duties and responsibilities, terms and conditions required of him under the Contract and did not commit any of the acts or omissions identified under the Contract as grounds for termination "for cause."

121.   As a result of Sparks' wrongful acts, Krutz has sustained damages in excess of

1    TWENTY THOUSAND DOLLARS ($20,000.00) to be determined at the time of trial.

2    As a result of Sparks' wrongful acts, and each of them, it has been necessary for Krutz to

3    engage the services of the law firm of Guild, Gallagher & Fuller, Ltd. to prosecute this action, and

4    Krutz is entitled to recover the reasonable attorney's fees and costs incurred herein.

5    SECOND CLAIM FOR RELIEF<br>(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against Sparks)

6

7    122.   Krutz re-alleges and incorporates by reference paragraphs 1 through 121 of this

8    Complaint as if set forth fully herein.

9    123.   There is implied in every contract a covenant of good faith and fair dealing which

10   provides that neither party will commit any act or omission that deprives the other party of the

11   benefits reasonably to be expected under the contract.

12   124.   By virtue of the acts and omissions set forth above, Defendants breach of the implied

13   covenant of good faith and fair dealing in the Contract, which breach proximately caused and

14   resulted in injury and damage to Krutz in excess of TWENTY THOUSAND DOLLARS

15   ($20,000.00) to be determined at the time of trial.

16   As a result of Sparks' wrongful acts, and each of them, it has been necessary for Krutz to

17   engage the services of the law firm of Guild, Gallagher & Fuller, Ltd. to prosecute this action, and

18   Krutz is entitled to recover the reasonable attorney's fees and costs incurred herein.

19   THIRD CLAIM FOR RELIEF<br>(Violation of State Constitutional Rights – Against Sparks)

20

21   125.   Krutz re-alleges and incorporates by reference paragraphs 1 through 124 of this

22   Complaint as if set forth fully herein.

23   126.   Article I, Section 8(5) of the Nevada Constitution provides that "no person shall be

24   deprived of life, liberty, or property, without due process of law."

25   127.   In terminating the Contract and ending his employment with Sparks without a fair

26   hearing, Defendants wrongfully, and in violation of Nevada Constitution's guarantee of due process,

27   deprived Krutz of his rights as a Nevada citizen and resident, including his property interest in his

28   employment and his liberty interest in pursuing his occupation and profession.

1    128.   As a result of Sparks' wrongful acts, Krutz has sustained damages in excess of

2    TWENTY THOUSAND DOLLARS ($20,000.00) to be determined at the time of trial.

3        As a result of Sparks' wrongful acts, and each of them, it has been necessary for Krutz to

4    engage the services of the law firm of Guild, Gallagher & Fuller, Ltd. to prosecute this action, and

5    Krutz is entitled to recover the reasonable attorney's fees and costs incurred herein.

6                              FOURTH CLAIM FOR RELIEF

7    (Violation of NRS 613.330 – Termination based on Age Discrimination – Against Sparks)

8    129.   Krutz re-alleges and incorporates by reference paragraphs 1 through 128 of this

9    Complaint as if set forth fully herein.

10   130.   NRS 613.330 provides it is an unlawful employment practice for an employer to

11   discharge any person or otherwise discriminate against any person because of his or her race, color,

12   religion, sex, sexual orientation, gender identity or expression, age, disability or national origin.

13   131.   Upon information and belief, VanderWell's comments to Krutz regarding "resigning

14   or retiring" and her unlawful actions to terminate Krutz's employment discriminatory actions based

15   on Krutz's age.

16   132.   As a result of Sparks' wrongful acts, Krutz has sustained damages in excess of

17   TWENTY THOUSAND DOLLARS ($20,000.00) to be determined at the time of trial.

18        As a result of Sparks' wrongful acts, and each of them, it has been necessary for Krutz to

19   engage the services of the law firm of Guild, Gallagher & Fuller, Ltd. to prosecute this action, and

20   Krutz is entitled to recover the reasonable attorney's fees and costs incurred herein.

21                               FIFTH CLAIM FOR RELIEF

22   (Violation of NRS 613.340 – Retaliation while engaging in protected activity – Against all
                                      Defendants)

23   133.   Krutz re-alleges and incorporates by reference paragraphs 1 through 132 of this

24   Complaint as if set forth fully herein.

25   134.   NRS 613.340 provides it is an unlawful employment activity to retaliate against a

26   person who is engaged in a protected activity.

27   135.   Krutz was engaged in a protected activity of filing multiple Human Resources

28   complaints for Age discrimination and retaliation, when Sparks further retaliated against Krutz from

1  engaging in those protected activities by terminating him "for cause" without sufficient basis.

2      136.    As a result of Sparks' wrongful acts, Krutz has sustained damages in excess of

3  TWENTY THOUSAND DOLLARS ($20,000.00) to be determined at the time of trial.

4      As a result of Sparks' wrongful acts, and each of them, it has been necessary for Krutz to

5  engage the services of the law firm of Guild, Gallagher & Fuller, Ltd. to prosecute this action, and

6  Krutz is entitled to recover the reasonable attorney's fees and costs incurred herein.

7                              SIXTH CLAIM FOR RELIEF
   (Section 1983 - Violation of Federal Constitutional Rights – Against Defendants Ed Lawson,
8      Donald Abbott, Dian VanderWell, Paul Anderson, Charlene Bybee and Kristopher Dahir)

9      137.    Krutz re-alleges and incorporates by reference paragraphs 1 through 136 of this

10 Complaint as if set forth fully herein.

11     138.    Section 1983 of Title 42 of the U.S. Code provides as follows:

12         Every person who, under color of any statute, ordinance, regulation,
           custom, or usage, of any State or Territory or the District of Columbia,
13         subjects, or causes to be subjected, any citizen of the United States or other
           person within the jurisdiction thereof to the deprivation of any rights,
14         privileges, or immunities secured by the Constitution and laws, shall be
           liable to the party injured in an action at law, suit in equity, or other proper
15         proceeding for redress. . . .

16     139.    Defendants are, and each of them is, a "person" as defined by 42 U.S.C. §1983.

17     140.    At all relevant times, Defendants acted under color of state law and while acting

18 under color of state law, deprived Krutz of both his property interest in his public employment and

19 his liberty interest in pursuing his regular occupation and profession without the due process of law

20 guaranteed by the 5th and 14th Amendments to the U.S. Constitution.

21     141.    At all relevant times, Defendants acted under color of state law and while acting

22 under color of state law, deprived Krutz of his right of free speech under the first amendment by

23 terminating his employment based on true statements made in a You Tube video during the course

24 and scope of his employment as City Manager, which right is guaranteed by the 1st Amendment to

25 the U.S. Constitution.

26     142.    As a result of Sparks' wrongful acts, Krutz has sustained damages in excess of

27 TWENTY THOUSAND DOLLARS ($20,000.00) to be determined at the time of trial.

28     As a result of Sparks' wrongful acts, and each of them, it has been necessary for Krutz to

1  engage the services of the law firm of Guild, Gallagher & Fuller, Ltd. to prosecute this action, and

2  Krutz is entitled to recover the reasonable attorney's fees and costs incurred herein under 42 U.S.C.

3  §1988 for violation of his federal constitutional rights.

4                         SEVENTH CLAIM FOR RELIEF
                          (Tortious Discharge – Against Sparks)

5

6      143.   Krutz re-alleges and incorporates by reference paragraphs 1 through 142 of this

7  Complaint as if set forth fully herein.

8      144.   Krutz's filing of Human Resources Complaints for age discrimination, hostile work

9  environment and retaliation are activities which are protected under Nevada law and which public

10  policy favors.

11      145.   Krutz was terminated from his employment from Sparks because of his participation

12  in filing Human Resources Complaints against Sparks City Council Members. This termination of

13  Krutz's employment was retaliatory in nature and contrary to the public policy of Nevada in

14  recognizing discrimination claims and his participation in protected activities.

15      146.   As a result of Sparks' wrongful acts, Krutz has sustained damages in excess of

16  TWENTY THOUSAND DOLLARS ($20,000.00) to be determined at the time of trial.

17      As a result of Sparks' wrongful acts, and each of them, it has been necessary for Krutz to

18  engage the services of the law firm of Guild, Gallagher & Fuller, Ltd. to prosecute this action, and

19  Krutz is entitled to recover the reasonable attorney's fees and costs incurred herein.

20                         EIGHTH CLAIM FOR RELIEF
                          (Civil Conspiracy – Against all Defendants)

21

22      147.   Krutz re-alleges and incorporates by reference paragraphs 1 through 146 of this

23  Complaint as if set forth fully herein.

24      148.   Krutz is informed and believes, and on that basis, alleges that Mayor Lawson, Abbott,

25  VanderWell, Bybee, Anderson, and Dahir and DOES I-X knowingly and willfully conspired and

26  agreed among themselves upon a plan and scheme riddled with malice, deceit and disinformation,

27  as hereinabove alleged, to wrongfully terminate the Contract between Krutz and Sparks "for cause"

28  on a pretext without basis in fact and to deny Krutz his contract rights to a full and complete

1  evaluation process and to a severance package based on termination without cause.

2        149.   Krutz is informed and believes, and on that basis, alleges that Mayor Lawson, Abbott,

3  VanderWell, Bybee, Anderson and Dahir and DOES I-X carried out acts and omissions set forth

4  above pursuant to, and in furtherance of, that conspiracy and above-alleged agreement, or otherwise

5  furthered the conspiracy.

6        150.   By virtue of the foregoing acts and omissions, Mayor Lawson, Abbott, VanderWell,

7  Bybee, Anderson, and Dahir and DOES I-X conspired to and did wrongfully deprive Krutz of his

8  rights under the Contract, and other property and liberty interests.

9        151.   As a result of Sparks' wrongful acts, Krutz has sustained damages in excess of

10  TWENTY THOUSAND DOLLARS ($20,000.00) to be determined at the time of trial.

11        152.   Krutz is informed and believes, and on that ground, alleges that  Mayor Lawson,

12  Abbott, VanderWell, Bybee, Anderson, and Dahir and DOES I-X carried out acts or omissions

13  alleged above, maliciously, with willful and conscious disregard for the rights and interests of Krutz,

14  and to harm, injure and oppress Krutz, entitling Krutz to an award of exemplary damages against

15  Mayor Lawson, Abbott, VanderWell, Bybee, Anderson, and Dahir and DOES I-X in an amount

16  sufficient to punish and deter them and other such persons from such conduct in the future.

17       As a result of Sparks' wrongful acts, and each of them, it has been necessary for Krutz to

18  engage the services of the law firm of Guild, Gallagher & Fuller, Ltd. to prosecute this action, and

19  Krutz is entitled to recover the reasonable attorney's fees and costs incurred herein.

20  <u>PRAYER</u>

21       WHEREFORE, Krutz prays for judgment as follows:

22        1.   For the First Claim for Relief, judgment in an amount in excess of Twenty Thousand

23  Dollars ($20,000.00) to be determined at the time of trial.

24        2.   For the Second Claim for Relief, judgment in an amount in excess of Twenty

25  Thousand Dollars ($20,000.00) to be determined at the time of trial.

26        3.   For the Third Claim for Relief, judgment in an amount in excess of Twenty Thousand

27  Dollars ($20,000.00) to be determined at the time of trial.

28        4.   For the Fourth Claim for Relief, judgment in an amount in excess of Twenty

Thousand Dollars ($20,000.00) to be determined at the time of trial.

5.    For the Fifth Claim for Relief, judgment in an amount in excess of Twenty Thousand Dollars ($20,000.00) to be determined at the time of trial.

6.    For the Sixth Claim for Relief, judgment in an amount in excess of Twenty Thousand Dollars ($20,000.00) to be determined at the time of trial.

7.    For the Seventh Claim for Relief, judgment in an amount in excess of Twenty Thousand Dollars ($20,000.00) to be determined at the time of trial.

8.    For the Eighth Claim for Relief, judgment in an amount in excess of Twenty Thousand Dollars ($20,000.00) to be determined at the time of trial.

9.    That the Court award exemplary damages to Krutz and against Defendants Mayor Lawson, Abbott, VanderWell, Bybee, Anderson, and Dahir and DOES I-X in an amount sufficient to punish the Defendants and set an example to deter such further conduct.

10.    Interest on all outstanding sums;

11.    Costs of Suit and reasonable attorneys' fees; and

12.    For such other relief as the Court deems just and proper.

## AFFIRMATION

The undersigned does hereby affirm that this document does not contain the personal information of any person as defined by NRS 239B.030 and NRS 603A.040.

DATED this 21st day of February 2025.

GUILD, GALLAGHER & FULLER, LTD.

By: _____

John K. Gallagher, Esq.
Nevada State Bar No. 956
Patrick H. Gallagher, Esq.
Nevada State Bar No. 14875
100 W. Liberty St., Ste. 800
P.O. Box 2838
Reno, NV 89505
Tel:    (775) 786-2366
Fax:    (775) 322-9105
jgallagher@ggfltd.com
pgallagher@ggfltd.com

*Attorneys for Plaintiff Neil C. Krutz*