UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

NEIL C. KRUTZ,

                              Plaintiff,

        v.

THE CITY OF SPARKS, *et al.*,

                              Defendants.

Case No. 3:25-cv-00159-MMD-CLB

ORDER

## I.   SUMMARY

Plaintiff Neil C. Krutz sued Defendants[1] City of Sparks ("the City" or "Sparks") and its councilmembers alleging wrongful termination from his position as City Manager. (ECF No. 1-1 ("Complaint").) Before the Court is Defendants' motion to dismiss the Complaint[2] (ECF No. 5 ("Motion")) and motion to disqualify counsel[3] (ECF No. 27 ("Motion to Disqualify")). For the reasons discussed below, the Court grants Defendants' Motion to dismiss in part and denies it in part; and denies Defendants' Motion to Disqualify.

## II.   BACKGROUND[4]

This action arises out of Krutz's employment with the City of Sparks and his subsequent for-cause termination by the City Council. (ECF No. 1-1 at 18.) In March 2019, Krutz was hired as the City Manager for the City of Sparks for a term extending through June 30, 2025. (*Id.* at 4, 7.) Krutz and the City entered into an employment contract outlining the terms of his employment, compensation, and termination. (*Id.* at 4-5.) The

---

[1]Named Defendants include Mayor Ed Lawson ("Mayor Lawson") and Councilmembers Donald Abbott, Dian VanderWell, Paul Anderson, Charlene Bybee, and Kristopher Dahir (collectively "Defendants"). (ECF No. 1-1.)

[2]Plaintiff responded (ECF No. 17), and Defendants replied (ECF No. 18).

[3]Plaintiff responded (ECF No. 35), and Defendants replied (ECF No. 39).

[4]The following facts are primarily adapted from the Complaint. (ECF No. 1-1.)

agreement included a for-cause termination provision authorizing the City, acting through the City Council, to terminate his employment "at any time" and "without prior notice." (*Id.*)

From 2020 to 2022, Krutz received satisfactory performance evaluations and was awarded salary increases and extensions of his employment agreement. (*Id.* at 12.) On May 8, 2023, however, the City Council convened a meeting to consider terminating his agreement. (*Id.* at 13.) The City Council relied primarily on one particular incident as grounds for termination. On December 5, 2022, after learning of a sensitive personnel matter involving Sparks Fire Chief Mark Lawson ("Lawson")—who faced possible criminal charges and later resigned—Krutz recorded a video statement[5] regarding Lawson's resignation, which subsequently resulted in a lawsuit[6] against Krutz and the City.[7] (*Id.* at 7-9.) In April 2023, Councilmembers expressed concerns about Krutz's competency and issued poor annual performance evaluations. (*Id.* at 10-11.) Shortly thereafter, in June 2023, the City Council moved to hire a third-party investigator to evaluate Krutz's performance in light of concerns regarding his "toxic leadership," "negative employee survey results," "employee morale," and "gender bias." (*Id.* at 14-15.)

In response, on July 19, 2023, Krutz filed an internal Human Resources complaint against Councilmembers Abbott, VanderWell, and Bybee alleging age discrimination[8],

[5]The parties dispute whether Krutz publicly disseminated the video statement or whether it was instead leaked to the public. (*See* ECF No. 5 at 4; ECF No. 1-1 at 8-9.) Defendants contend that Krutz posted the video on YouTube (ECF No. 5 at 4), whereas Krutz asserts that the video was shared privately via email with only the City of Sparks Fire Department employees, Mayor Lawson, Councilmembers Abbott, VanderWell, Anderson, Bybee, and Dahir, and Assistant City Managers Alyson McCormick and John Martini (ECF No. 1-1 at 8-9).

[6]The Court finds that the nature of the suit is unclear. Defendants contend that Lawson sued for defamation (ECF No. 5 at 4), while Krutz's Complaint does not identify the specific cause of action. (ECF No. 1-1 at 9.)

[7]On February 12, 2024, the City Council unanimously approved a settlement agreement with Lawson, agreeing to pay him $381,000.00. (ECF No. 1-1 at 19.) On April 7, 2024, Krutz filed a complaint with the Nevada Equal Rights Commission ("NERC" or the "Commission") and, on December 17, 2024, received a "right to sue" letter from the Commission. (*Id.*)

[8]Krutz's age discrimination allegations stem from an April 2023 meeting with Councilmember VanderWell, during which she allegedly told him to "retire or resign." *(fn. cont…)*

2

hostile work environment, and retaliation and submitted FOIA requests and preservation letters to the City. (*Id.* at 15-16.) On August 25, 2023, the City Council held a meeting to discuss Krutz's employment agreement.[9] (*Id.* at 16.) On August 28, 2023, Krutz sent a letter to Human Resources complaining of retaliatory conduct by Mayor Lawson. (*Id.*) Defendants now construe these actions as an attempt to avoid termination and to prepare for anticipated litigation. (*See* ECF No. 5 at 6.)

By late summer of 2023, Krutz was placed on administrative leave with restricted access to City facilities and computer systems. (ECF No. 1-1 at 16-17.) Krutz was also served with a "Notice of Special Meeting" stating that the City Council would consider his "alleged misconduct, professional competence, or health, which could potentially lead to his termination." (*Id.* at 16.) On August 31, 2023, Krutz sent another letter to Human Resources complaining of further retaliatory action. (*Id.* at 17.) Shortly thereafter, the City Council convened its special meeting and, on September 5, 2023, voted to terminate Krutz's employment "for cause." (*Id.* at 17-18.) At the special meeting, the City issued a public statement prepared by Councilmember Paul Anderson citing the proposed reasons for the termination. (*Id.*) Among those reasons cited were Krutz's dealings with Lawson "without properly consulting the City council, human resources or legal counsel."[10] (*Id.*)

Krutz asserts eight claims against the City and its councilmembers based on his alleged wrongful termination. Five claims are brought against the City only: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of Nevada state constitutional rights; (4) age discrimination in violation of NRS § 613.330;

---

(ECF No. 1-1 at 9.) Krutz interpreted the remark as suggesting that he "was too old to perform his duties" as city manager. (*Id.*)

[9]Krutz alleges that, at this meeting, Mayor Lawson—who was aware of Krutz's pending Human Resources complaint—retaliated against him by adding "termination of Mr. Krutz's contract" to the agenda for consideration at the next scheduled City Council meeting. (ECF No. 1-1 at 16.)

[10]Earlier in his Complaint, Krutz includes quoted email correspondence with City Attorney, Wes Duncan, relating to Lawson's prospective termination and/or resignation. (*See* ECF No. 1-1 at 8.) Defendants rely on the disclosure of these communications as grounds for dismissal and disqualification of counsel.

and (7) tortious discharge. (*Id.* at 19-21, 23.) Three remaining claims are raised against all Defendants: (5) retaliation while engaging in protected activity in violation of NRS § 613.340; (6) violation of the U.S. Constitution under 42 U.S.C. § 1983; and (8) civil conspiracy. (*Id.* at 21-24.)

## III. DISCUSSION

Defendants first move for dismissal of Krutz's sixth claim on qualified immunity grounds, arguing that Krutz cannot establish Fourteenth Amendment procedural due process or First Amendment free speech violations under 42 U.S.C. § 1983. (ECF No. 5 at 8-14.) Defendants next seek dismissal of Krutz's third claim against Sparks, similarly arguing that Krutz cannot establish a procedural due process violation under the Nevada Constitution, arguing that the Nevada Supreme Court has not recognized a procedural due process cause of action. (*Id.* at 14-15.) Defendants then move for the dismissal of Krutz's six remaining claims under Federal Rule of Civil Procedure 12(b)(6).[11] (*Id.* at 15-23.) Lastly, Defendants seek to dismiss the Complaint for the improper disclosure of privileged attorney-client information in litigation (*id.* at 23-24), the same ground upon which they based their Motion to Disqualify counsel (ECF No. 27). The Court will address each of these arguments in turn.

///

///

///

///

///

---

[11]Defendants move for dismissal of the following claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6): (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (4) age discrimination in violation of NRS § 613.330; (5) retaliation while engaging in protected activity in violation of NRS § 613.340; (7) tortious discharge; and (8) civil conspiracy. (ECF No. 5 at 15-23); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (holding that, to withstand a Rule 12(b)(6) challenge, a plaintiff must allege facts to "nudge[] their claims across the line from conceivable to plausible"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding that a district court must accept as true all well-pled factual allegations in a complaint, while legal conclusions are not entitled to the assumption of truth).

### A.    Claims 6 and 3 – Violations of U.S. Constitution and Nevada Constitution

#### 1.    Claim 6 – Fourteenth Amendment Procedural Due Process Violation

Defendants first argue they are entitled to qualified immunity on Krutz's sixth claim for relief (ECF No. 1-1 at 22-23), which alleges First and Fourteenth Amendment violations under 42 U.S.C. § 1983 and is brought against Defendants Mayor Lawson, Abbott, VanderWell, Anderson, Bybee, and Dahir in their individual capacities.[12] (ECF No. 5 at 8-13.) In particular, Defendants assert that Krutz is unable to establish a Fourteenth Amendment procedural due process violation occurred because of "overly broad" allegations and because Krutz "received the process he consented to in his employment contract." (*Id.* at 11.) Defendants further argue that Krutz cannot establish a free speech violation under the First Amendment because Krutz made his video statement in an "employment capacity," and public employee statements made "pursuant to official duties" do not amount to protected speech activity. (ECF No. 5 at 11.) For the reasons explained below, the Court disagrees with Defendants and denies the Motion as to the sixth claim for relief.

Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

_____

[12]Individual capacity claims seek "to impose personal liability upon a government official." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Official capacity claims, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978). Defendants contend that the Complaint (ECF No. 1-1 at 21-24) can be read to assert official capacity claims against Mayor Lawson and Councilmembers Abbott, VanderWell, Anderson, Bybee, and Dahir. (ECF No. 5 at 13-14.) In his response, however, Krutz concedes that he is not asserting any claims based on Defendants' "official capacities" and reiterates that his fifth, sixth, and eighth claims are brought against Defendants in their "individual" capacities. (ECF No. 17 at 13-14.) Accordingly, the Court dismisses any claims that could be construed as official capacity claims.

reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether qualified immunity applies, the Court must consider: "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson,* 555 U.S. at 232). District courts have discretion to address these prongs in any order. *See Pearson*, 555 U.S. at 236.

As to the Fourteenth Amendment claim, Krutz alleges that he was deprived of his "property and liberty interest[s]" in his public employment and in pursuing his regular occupation and profession without due process of law. (ECF No. 1-1 at 22.) In their Motion, Defendants argue that Krutz cannot establish a procedural due process violation for two reasons. First, Defendants contend that Krutz fails to "allege *how* each Defendant deprived him of procedural due process," asserting that "broadly alleging" a constitutional violation is insufficient to plausibly state a claim. (ECF No. 5 at 10-11 (citing *Suever v. Connell*, 579 F.3d 1047, 1061- 62 (9th Cir. 2009)).) The Court finds this contention is best understood as a Rule 12(b)(6) failure-to-state-a-claim argument and therefore declines to address it within the qualified immunity analysis.

Second, Defendants contend that, because Krutz "received the process he consented to in his employment contract," he cannot establish a Fourteenth Amendment due process violation. (ECF No. 5 at 11.) They rely in particular on the contract's "termination for cause" provision, which states: ". . . at any time and without prior notice, CITY, acting through City Council, may terminate MANAGER's employment as City Manager for cause as is defined hereafter." (ECF No. 1-1 at 5.) But private, contractually agreed-upon terms cannot supersede or substitute constitutional protections. *See generally Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990) (holding that Due Process Clause violations are actionable under § 1983 if and when the State fails to provide "constitutionally adequate" due process); *see also Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (holding that the government violates procedural due process if (1) "there exists a liberty or property interest which has been interfered with by the

State," and (2) "the procedures attendant upon that deprivation were" not "constitutionally sufficient") (internal citation and quotation marks omitted). Here, Defendants improperly conflate constitutional due process rights with the procedural terms set forth in the employment agreement. Thus, accepting the allegations in the Complaint as true[13], the Court denies dismissal of the Fourteenth Amendment portion of the sixth claim for relief.

### 2.      Claim 3 – Violation of Nevada State Constitutional Rights

Before turning to the alleged First Amendment free speech violations under 42 U.S.C. § 1983, the Court will briefly address Defendants' attempt to dismiss Krutz's third claim for relief (ECF No. 1-1 at 20-21)—a due process claim under Article 1, § 8 of the Nevada Constitution[14]—alleging denial of a fair hearing prior to termination of his employment. Beyond reiterating their arguments regarding the federal due process claim, Defendants assert that the Nevada Supreme Court has not recognized a procedural due process cause of action directly under the state constitution. (ECF No. 5 at 14-15.) However, as Krutz points out, this assertion is incorrect. (ECF No. 17 at 14.) Nevada courts have repeatedly acknowledged procedural due process protections under the Nevada Constitution. *See generally*, *Sw. Gas Corp. v. Pub. Utils. Comm'n of Nev.*, 504 P.3d 503, 511 (Nev. 2022) (reaffirming that procedural due process "requires notice and an opportunity to be heard") (internal citations omitted); *see, e.g.*, *Gordon v. Geiger*, 402 P.3d 671, 674-75 (Nev. 2017) (analyzing alleged violations under both the Fourteenth Amendment and Article 1, Section 8 of the Nevada Constitution); *Zamboanga v. Ortiz*, 542 P.3d 18 (Table), 2024 WL 225255, at *4-*5 (Nev. App. Jan. 19, 2024) (finding an abuse of discretion where the district court resolved a child custody matter without holding an evidentiary hearing). Because Nevada law recognizes procedural due process claims under the state constitution and for the reasons stated above as to the Fourteenth

---

[13]A district court must accept as true all well-pled factual allegations in a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[14]Under Article I, § 8(2) of the Nevada Constitution, "[n]o person shall be deprived of life, liberty, or property, without due process of law."

Amendment claim, dismissal is therefore unwarranted.[15] Accordingly, the Court denies dismissal of Krutz's third claim for relief.

### 3. Claim 6 – First Amendment Free Speech Violation

As to the First Amendment claim, the Complaint alleges that Krutz's constitutional free speech rights were violated when his employment was terminated "based on true statements made in a YouTube video during the course and scope of his employment as City Manager." (ECF No. 1-1 at 22.) In their Motion, Defendants argue that because Krutz characterizes the alleged First Amendment activity as occurring within the "course and scope" of his employment, it does not constitute protected speech and Krutz therefore cannot establish a constitutional violation. (ECF No. 5 at 11.) Krutz counters that Defendants' own reference to the "unauthorized online video" in a prepared councilmember statement (*see* ECF No. 1-1 at 18) suggests that they, in fact, viewed the statement as *outside* the scope of his employment. (ECF No. 17 at 10.)

The Ninth Circuit has made clear that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Even so, a factual dispute prevents the Court from concluding at this stage of the litigation that no violation of a "clearly established right" as presented in the Motion occurred. That is, the content of the video statement is unclear, and, on a Rule 12(b)(6) motion, the Court cannot look beyond the pleadings.[16] As a result, the Court cannot determine with certainty whether the statement

---

[15]Defendants also argue that, even if the Court recognizes this claim, qualified immunity should apply based on the "common law defenses" available to government officials at the time the Nevada Constitution was adopted. (ECF No. 5 at 15.) The Court rejects this argument, as qualified immunity is "not a defense available to state actors sued for violations of the individual rights enumerated in Nevada's Constitution," except as specifically provided for by the state legislature. *See Mack v. Williams*, 522 P.3d 434, 451 (Nev. 2022) (referencing waiver of the State and state actors' immunity from liability under NRS § 41.031(1) unless an express exception applies).

[16]"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) (internal citation omitted). Although, the Court may *(fn. cont…)*

was made "pursuant to official duties" or otherwise within the scope of Krutz's employment. Moreover, Krutz's argument as presented in his opposition suggests that the video statement was not made within the scope of his official duties. (*See* ECF No. 17 at 10.)

Construing the allegations in the Complaint in a light most favorable to Krutz and drawing all inferences in his favor[17], *see In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996), the Court thus denies dismissal of the First Amendment portion of his sixth claim for relief.

### B.    Proposed Dismissal of Remaining Claims Under Rule 12(b)(6)

Defendants move for dismissal of Krutz's six remaining claims under Fed. R. Civ. P. 12(b)(6): (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (4) age discrimination in violation of NRS § 613.330; (5) retaliation while engaging in protected activity in violation of NRS § 613.340; (7) tortious discharge; and (8) civil conspiracy. (ECF No. 5 at 15-23.) The Court will address these arguments in turn, and, for the reasons explained below, will dismiss these claims under Rule 12(b)(6).

### 1.    Claim 1 – Breach of Contract

Defendants argue that Krutz's breach of contract claim against Sparks fails because Defendants did not breach the employment contract and, moreover, because Krutz's allegations are conclusory. (ECF No. 5 at 15-16.) Defendants contend that Krutz was properly terminated under the contract's for-cause termination provision after he exposed the City to liability through the "video statement." (*Id.* at 16.) They further argue that the Complaint merely references the City's purported "wrongful acts" (ECF No. 1-1

consider materials "incorporated by reference" into the complaint and may take judicial notice of "matters of public record." *See Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Notwithstanding, here, there is no request that the Court take judicial notice of any matters outside the pleadings.

[17]The Court takes as true all allegations of material fact in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

at 19-20) without identifying the specific contractual provision breached or the conduct constituting a material breach. (ECF No. 5 at 16.)

Under Nevada law, a plaintiff asserting a breach of contract claim must allege: "(1) formation of a valid contract; (2) performance or excuse of performance by the [moving party]; (3) material breach by the defendant; and (4) damages." *Leach Logistics, Inc. v. CF USA, Inc.*, 751 F. Supp. 3d 1087, 1096 (D. Nev. 2024) (citing *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987)) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement."). The Court agrees that, here, Krutz fails to plausibly allege sufficient facts to support all elements of a breach of contract claim.[18] Accordingly, the Court finds Krutz has failed to sufficiently allege a breach of contract claim.

### 2. Claim 2 – Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants next argue that Krutz's contractual breach of implied covenant of good faith and fair dealing claim against Sparks likewise fails as a matter of law because Krutz does not adequately plead all elements of the cause action. (ECF No. 5 at 16-17.) Defendants contend that, as with the breach of contract claim, the Complaint offers only a "formulaic recitation" of certain elements, relying on vague and unspecified "acts and omissions" (ECF No. 1-1 at 20) without factual support. (ECF No. 5 at 17.) Krutz counters that he has sufficiently alleged a plausible claim for breach of the implied covenant of good faith and fair dealing, arguing that the City "went to great lengths to contrive a basis to terminate the contract 'for cause' when there was no valid basis to do so and terminated [him] unlawfully." (ECF No. 17 at 16-17.)

---

[18]While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

In Nevada, "all contracts contain an implied covenant of good faith and fair dealing[.]" *A.C. Shaw Const., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989). To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege: (1) the existence of a contract between the parties; (2) that the defendant owed a duty of good faith and fair dealing to the plaintiff; (3) the defendant breached his duty by performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995). Here, Krutz sufficiently alleges the first two elements—that he entered an employment contract with Sparks (ECF No. 1-1 at 4-5) and that Sparks owed him a duty of good faith and fair dealing under that contract (*id.* at 20). However, Krutz fails to sufficiently allege the third element—that Sparks breached its duty by performing the contract "in a manner unfaithful to" or in conscious disregard of the purpose of the contract. Krutz's allegations as to the City's intent are merely conclusory and therefore not entitled to the assumption of truth. *See Iqbal*, 556 U.S. 662, 678-79 (2009).

Accordingly, the Court finds that Krutz has failed to sufficiently allege a claim for contractual breach of the implied covenant of good faith and fair dealing upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

### 3.    Claim 4 – Age Discrimination in Violation of NRS § 613.340

Defendants move to dismiss Krutz's fourth claim for relief against Sparks alleging state-law-based age discrimination in violation of NRS § 613.330[19] (ECF No. 1-1 at 21), arguing both failure to exhaust administrative remedies and failure to state a claim. (ECF No. 5 at 18.) The Court will first address the exhaustion argument as a threshold matter before turning to Defendants' Rule 12(b)(6) argument.

Defendants first argue that Krutz's claim is procedurally barred on exhaustion grounds. (*Id.* at 17-18.) Krutz counters that he properly exhausted his administrative remedies when he filed a formal complaint with the NERC (*see* ECF No. 1-1 at 19). (ECF

[19]Under NRS § 613.330(a), it is an unlawful employment practice to discharge any individual "because of his or her race, color, religion, sex, sexual orientation, gender identity or expression, age, disability or national origin."

No. 17 at 17.) Construing the allegations in the Complaint in a light most favorable to Krutz, the Court agrees with Krutz on the issue of administrative exhaustion.

Generally, in Nevada, state law discrimination claims are "evaluated the same way as their federal analogs." *Bullard v. Las Vegas Valley Water Dist.*, Case No. 2:15–cv–00948–JAD–VCF, 2018 WL 715358, at *4 (D. Nev. Feb. 5, 2018) (referencing three federal schemes: Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act (ADA)); *see also Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) (holding that state law claims need to be exhausted); *Palmer v. State Gaming Control Board*, 787 P.2d 803, 804 (1990) (holding that, under NRS § 613.420, the Nevada legislature intended plaintiffs to administratively exhaust employment discrimination claims "prior to seeking redress in the district courts" to "prevent the courts from being inundated with frivolous claims").

Under *Copeland v. Desert Inn Hotel*, 673 P.2d 490 (Nev. 1983), an employee claiming discrimination under NRS § 613.420[20] must file a claim with the NERC and have that agency adjudicate the claim before it can be properly brought in district court. Here, Krutz alleges that he filed a complaint with the NERC and received a right to sue letter in return. (ECF No. 1-1 at 19.) Defendants acknowledge Krutz's NERC claim but argue that Krutz, nonetheless, failed to properly exhaust "specifically for an 'age discrimination' claim" because his Complaint does not state whether age discrimination was alleged in the administrative charge. (ECF No. 18 at 7-8.) The Court is unconvinced by this argument. The Ninth Circuit has held that if an employee alleging discrimination later files a district court action, they may expand the action to include allegations of other discrimination so long as the new claims are "'reasonably related to the allegations of the [administrative] charge'." *See, e.g.*, *Shah v. Mt. Zion Hospital & Medical Ctr.,* 642 F.2d 268, 271 (9th Cir.1981) (involving a claim filed with the EEOC alleging sex and national origin discrimination, where the employee attempted to expand his action at trial to include

---

[20]NRS § 613.420 covers unfair employment practices within the scope of NRS § 613.310 to 613.4383.

claims of race, color, and religious discrimination) (internal citation omitted). Moreover, federal courts have been hesitant to allow "procedural technicalities" to bar discrimination claims, generally. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-65 (5th Cir.1970) (holding that "procedural technicalities are not to stand in the way of Title VII complainants"). Accordingly, the Court finds that Krutz's age discrimination claim is not procedurally barred.

However, Defendants contend that, even if Krutz had filed a NERC complaint, he has failed to plead the elements of an age discrimination claim under the ADEA[21], asserting that Councilmember VanderWell's "retire or resign" remark (ECF No. 1-1 at 9) is too speculative to satisfy the plausibility requirement of Rule 12(b)(6). (ECF No. 5 at 18-19.) Krutz counters that VanderWell's remark, when considered in combination with the City Council's investigations of him, is, indeed, sufficient to state a claim for age discrimination. (ECF No. 17 at 18.) The Court agrees with Defendants.

"To establish a disparate treatment claim under the ADEA, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination, either through the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or with direct or circumstantial evidence of discriminatory intent." *Coleman v. Barrick Goldstrike Mines, Inc.*, Case No. 3:20-cv-00718-MMD-CLB, 2023 WL 5806457, at *3 (D. Nev. March 23, 2023) (citing *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003)). Under the *McDonnell Douglas Corp.* framework, "the employee must first establish a prima facie case of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (internal citations omitted). To do so, a plaintiff must show that he was: (1) a member of the protected class (i.e., at least 40 years old); (2) performing his job satisfactorily; (3) subject to an adverse employment decision; and (4) either replaced by a substantially younger employee with equal or inferior qualifications or that there were

---

[21]As mentioned above, Nevada state law discrimination claims are "evaluated the same way as their federal analogs." *Bullard*, 2018 WL 715358, at *4. The Court will thus evaluate the NRS § 613.330 claim under the ADEA, which makes it unlawful "to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1).

circumstances otherwise "giving rise to an inference of age discrimination." *See id.* (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). Here, one councilmember's remark is too speculative to "give rise to an inference of age discrimination" that resulted in Krutz's termination. *See also Gross v. FBL Financial Serv's., Inc.*, 557 U.S. 167, 174 (2009). ("[T]he ADEA does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor.") A plaintiff also "must prove . . . that "age was the 'but-for' cause of the employer's adverse action," and, here, the Court agrees with Defendants that Krutz fails to allege that the councilmember's remark was the "but-for cause" of his termination. *See Bullard*, 2018 WL 715358, at *5 (quoting *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012) (citing *Gross*, 557 U.S. at 177)).

Accordingly, the Court finds that Krutz has failed to sufficiently allege a state-law-based age discrimination claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

### 4.    Claims 5 and 7 – Retaliation While Engaging in Protected Activity in Violation of NRS § 613.340; and Tortious Discharge

Defendants move to dismiss Krutz's fifth claim for relief[22] for retaliation while engaging in protected activity in violation of NRS § 613.340[23], alleging that Defendants unlawfully terminated him "'for cause' without sufficient basis" after he filed multiple internal complaints with Human Resources "for age discrimination and retaliation." (ECF

---

[22]Krutz's fifth claim for relief is brought against all Defendants (as opposed to the City only). As Defendants point out in their reply, because Krutz fails to respond to their argument that "liability for employment discrimination does not extend to individual defendants of the employer," *see Fox v. Sysco Corp.*, Case No. 2:11–cv–00424–RLH–PAL, 2011 WL 5838179, at *4 (D. Nev. Nov. 21, 2011) (dismissing Title VII and NRS § 613.330 racial discrimination claims against individual defendant-employees of corporate employer), the Court should dismiss this claim as unopposed as to each individual Defendant. (ECF No. 18 at 9.) Accordingly, under LR 7-2(d), the Court will dismiss the fifth claim for relief as to each individual Defendant-employee of the City.

[23]Under NRS § 613.340, Nevada's anti-retaliation statute, it is unlawful to discriminate against any individual because they have "opposed any practice made an unlawful employment practice by NRS 613.310 to 613.435" or because they have "made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing . . ."

No. 1-1 at 21-22.) Defendants contend that Krutz cannot plausibly allege retaliation because he can neither plead that he was engaged in a "protected activity" at the time of his termination nor demonstrate a causal link between the alleged protected activity and his subsequent termination. (ECF No. 5 at 19-20.) Krutz counters that his submission of formal internal complaints to Human Resources constitutes "protected activity" and that his July and August 2023 complaints are causally linked to his termination, which occurred soon thereafter on September 5, 2023. (ECF No.17 at 19.) The Court agrees with Defendants.

To establish a claim of retaliation, a plaintiff must show that: (1) he was engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.[24] *See Vasquez v. County of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003) (internal citations omitted) (analyzing retaliation under Title VII); *see also Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008) (internal citation omitted); *see also Pope*, 114 P.3d at 311-313 (relying on Title VII cases to evaluate third-party retaliation claim brought under Nevada's anti-retaliation statute).

Because courts have held that participation in internal investigations does not qualify as "protected activity," Defendants contend that Krutz's allegations involving the submission of internal complaints to Human Resources fail to satisfy the first prong of the above analysis. (ECF No. 5 at 20); *see Slack v. United Airlines, Inc.*, Case No. 2:18-cv-00899-GMN-CWH, WL 1446970, at *5 (D. Nev. Mar. 29, 2019) (citing *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990); and *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (explaining protections for purposes of participation in "protected

---

[24]As mentioned, Nevada state law discrimination claims are "evaluated the same way as their federal analogs." *Bullard*, 2018 WL 715358, at *4; *see also Pope*, 114 P.3d at 311 (explaining that Nevada law follows federal caselaw in interpreting its statutes prohibiting retaliation for protected activities). Title VII's anti-retaliation provision, *see* 42 U.S.C. § 2000e-3(a), and NRS § 613.340 both prohibit employers from retaliating against employees who have "opposed any practice made an unlawful employment practice" or who "mak[e] a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing." The Court will thus rely on Title VII cases to evaluate the Nevada state law retaliation claim.

activity" concern "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, inhouse investigation, conducted apart from a formal charge with the EEOC")). Here, Krutz filed his internal complaints in July and August of 2023, which were neither "in conjunction with" nor "after" his formal engagement with the NERC in April 2024. Moreover, Krutz's engagement with the NERC occurred *after* the City's alleged retaliatory conduct (i.e., the "for cause" termination on September 5, 2023). Thus, Krutz has not alleged a plausible retaliation claim based on his failure to satisfy the first prong as to "protected activity."[25] Accordingly, the Court finds that Krutz has failed to sufficiently allege a state-law-based retaliation claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Defendants also seek to dismiss Krutz's seventh claim for tortious discharge. Krutz alleges that the City wrongfully discharged him in retaliation for opposing discriminatory conduct in violation of Nevada public policy. (ECF No. 1-1 at 23.) Defendants argue that this common law claim is barred as a matter of law because Nevada anti-discrimination statutes, *see* NRS § 613.310 *et seq.*, provide an adequate and comprehensive statutory remedy. (ECF No. 5 at 20-21.) Indeed, "[t]he Nevada Supreme Court has declined to recognize tortious discharge claims where a 'comprehensive statutory remedy' exists." *Pasinger v. Starbucks Corp.*, Case No. 3:07-cv-00452–BES–VPC, WL 11399722, at *3 (D. Nev. Sept. 30, 2008) (citing *Shoen v. Amerco*, 896 P.2d 469, 475 (1995)); *see also Sands Regent v. Valgardson*, 777 P.2d 900, 901 (1989) (declining to recognize a public policy tort for age discrimination based upon the remedy already available in Nevada's anti-discrimination statute). The Court agrees that, here, NRS § 613.310 *et seq.* provides an adequate and comprehensive statutory remedy, thus rendering dismissal of the tortious discharge claim appropriate.

---

[25]Because Krutz has failed to satisfy the first element of a prima facie retaliation claim, the Court need not analyze Defendants' argument as to causation.

### 5.      Claim 8 – Civil Conspiracy

Krutz alleges that all Defendants conspired and agreed "upon a plan and scheme riddled with malice, deceit and disinformation" to "wrongfully terminate" his employment contract "for cause" and "on a pretext" to deny him "his contract rights to a full and complete evaluation process and to a severance package based on termination without cause." (ECF No. 1-1 at 23-24.) Defendants contend that Krutz has failed to plead the elements of a civil conspiracy claim, asserting that he fails to tie his claim to any substantive cause of action. (ECF No. 5 at 21-22.) The Court agrees with Defendants.

"An actionable conspiracy consists of a combination of (1) two or more persons who, (2) by some concerted action, (3) intend to accomplish an unlawful objective for the purpose of harming another, and (4) damage results from the act or acts." *Hilton Hotels Corp. v. Butch Lewis Prod's., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (internal citations omitted). "When pleading a claim for civil conspiracy, a plaintiff must plead with particular specificity as to 'the manner in which a defendant joined in the conspiracy and how he participated in it.'" *Century Sur. Co. v. Prince*, 265 F.Supp.3d 1182, 1194 (D. Nev. 2017), aff'd, 782 F. App'x 553 (9th Cir. 2019) (quoting *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984)). Here, Krutz has not sufficiently pleaded either a "concerted action" or an "inten[t] to accomplish some unlawful objective." *See Hilton Hotels Corp.*, 862 P.2d at 1210. Krutz's principal allegation is a conclusory assertion of a "plan and scheme riddled with malice, deceit and disinformation" to "wrongfully terminate" his employment contract, which is not enough to state a claim alleging engagement in civil conspiracy. (ECF No. 1-1 at 23.)

Accordingly, the Court finds that Krutz has failed to sufficiently allege a civil conspiracy claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Krutz asks for leave to amend in the event the Court grants dismissal under Rule 12(b)(6). (ECF No. 17 at 23.) The Court should give leave to amend freely when justice requires, though leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4)

is futile." *Amerisource Bergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (internal citation omitted). Because Krutz has not amended his pleading and because the Court cannot find that amendment is futile, the Court grants Krutz leave to file an amended complaint to cure the deficiencies of the claims dismissed under Rule 12(b)(6).

### C.    Disclosure and Use of Privileged Attorney-Client Communications

Lastly, Defendants argue the Complaint should be dismissed because Krutz and his counsel improperly disclosed and relied upon the City's privileged attorney-client communications to draft the Complaint. (ECF No. 5 at 23-24.) In particular, Defendants contend that the Complaint improperly utilizes and discloses privileged email communications from City Attorney, Wes Duncan, to Krutz and other City employees discussing Fire Chief Lawson's prospective termination and/or resignation.[26] (*Id.*; *see* ECF No. 1-1 at 8.) Krutz counters that dismissal is improper because Defendants effectively waived the attorney-client privilege by "publicly plac[ing] at issue the communication from [their] attorney, Wes Duncan," through the prepared statement (ECF No. 1-1 at 17-18) presented at the special meeting that resulted in Krutz's termination. (ECF No. 17 at 23.) The Court agrees with Krutz and denies dismissal on this ground.[27]

Under the "anticipatory waiver" principle (also known as "at-issue waiver"), "the attorney-client privilege is waived when a litigant places information protected by it in issue" because "to allow the privilege to protect against the disclosure of such

---

[26]In their Motion, Defendants rely on *Las Vegas Sands v. Eighth Jud. Dist. Ct.*, 331 P.3d 905 (Nev. 2014) (analyzing whether a terminated corporate employee is within the "class of persons" entitled to access, view, and use his corporate employer's privileged documents—which pertain to his tenure with the employer—in litigation after-the-fact) to support their improper disclosure argument. (ECF No. 5 at 23.) There, the state Supreme Court held that a "former employee is not entitled to access or use his former employer's privileged communications in litigation" and that this "privilege belongs to the former employer." *Id.* at 913-14. However, here, the Court finds that the alleged privileged communications at issue are distinguishable because resolution of the present case necessarily requires their review. As a result, and for the additional reasons below, the Court agrees with Krutz that the privilege ought to be waived.

[27]Defendants raised the same arguments in their Motion to Disqualify. (ECF No. 27.) Because the Court denies dismissal on this ground, the Court similarly denies the Motion to Disqualify.

information *would be manifestly unfair* to the opposing party." *Wardleigh v. Second Jud. Dist. Ct.*, 891 P.2d 1180, 1186 (Nev. 1995) (citing *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir.1989)) (internal quotation omitted). That is, at-issue waiver embodies the principle that "*fairness demands* that the opposing party be allowed to examine the whole picture." *Id.* (internal citation omitted).

As mentioned, the privileged communications at issue relate to emailed statements from City Attorney, Wes Duncan, to Krutz and other City employees regarding Fire Chief Lawson's prospective termination and/or resignation (*see* ECF No. 1-1 at 8), which Defendants construe as privileged "legal advice" and "recommendation." (ECF No. 5 at 24.) However, as Krutz correctly notes, Defendants placed this information "at issue" when they publicly cited it as grounds for Krutz's termination in their special meeting: "Mr. Krutz['s] handling of the fire chief without properly consulting the City council, human resources *or legal counsel*, failed to comply with city policies rules and governing body directives. . ." (ECF No. 1-1 at 18-19) (emphasis added). The Court thus finds that the City effectively waived its right to this particular privileged communication. Moreover, allowing the privilege to protect against disclosure, here, would be "manifestly unfair" to Krutz because it would detract from the Court's assessment of the "whole picture" relating to his wrongful termination claims. Accordingly, the Court agrees with Krutz and denies dismissal based on these grounds.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendants' motion to dismiss (ECF No. 5) is granted in part and denied in part. The Motion is denied as to claims 3 and 6 and granted as to claims 1, 2, 4, 5, 7, and 8. The Court dismisses claims 1, 2, 4, 5, 7, and 8 without prejudice and with leave to amend. Plaintiff will have 15 days to file an amended complaint to cure

the deficiencies of these claims. Failure to file an amended complaint within 15 days will result in dismissal of these claims with prejudice, and the case will proceed on claims 3 and 6.

It is further ordered that Defendants' motion to disqualify counsel (ECF No. 27) is denied.

DATED THIS 22nd Day of January 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

20