JORDAN T. SMITH, ESQ., Nevada Bar No. 12097
jtsmith@bhfs.com
BRIANNA SMITH, ESQ., Nevada Bar No. 11795
bsmith@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

NEIL C. KRUTZ, an individual,

Plaintiff,

vs.

THE CITY OF SPARKS, a political subdivision of the State of Nevada; ED LAWSON, individually and as Mayor of the City of Sparks; DONALD ABBOTT, individually and as Councilmember for the City of Sparks; DIAN VANDERWELL, individually and as Councilmember for the City of Sparks, PAUL ANDERSON, individually and as Councilmember for the City of Sparks; CHARLENE BYBEE, individually and as Councilmember for the City of Sparks; KRISTOPHER DAHIR, individually and as Councilmember for the City of Sparks; and DOES I-X, inclusive,

Defendants.

CASE NO.: 3:25-cv-00159-MMD-CLB

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 50]**

## I. INTRODUCTION

Plaintiff Neil Krutz continues inflicting harm on the City of Sparks and its residents. Under an employment agreement, Krutz served as City Manager for several years, during which time his leadership and decision making steadily deteriorated. As the First Amended Complaint confirms, his tenure was marred by a series of inexcusable missteps—including his unilateral decision to record and circulate an "announcement video" regarding a sensitive personnel matter—conduct that exposed the City to costly litigation and ultimately resulted in a $381,000 settlement. After months of negative employee comments and survey results, poor performance evaluations, and

widespread concerns about his leadership style, the City Council had ample grounds to doubt whether he could continue effectively serving as a City executive.

The events that followed were neither abrupt nor opaque. City leadership met with Krutz multiple times in early April to discuss concerns directly with him. He received written notice that the City Council would review issues relating to his performance and written performance evaluations documenting serious deficiencies. At the public May 8 meeting, the City Council openly discussed their concerns and informed Krutz—on the record—that termination was under consideration. When a motion to terminate him without cause failed, the Council nevertheless continued to gather information, respond to employee feedback, and evaluate next steps. On June 12, the Council voted to engage a third-party investigator after discussing the negative employee-survey results, leadership issues, and misconduct reports that had been presented.

As scrutiny increased, and he saw the writing on the wall, Krutz bombarded the City with internal HR complaints, public records demands, and accusations of retaliation, all while the Council continued to assess concerns that predated every one of his manufactured grievances. By late August 2023, as his relationship with the City leadership deteriorated further, the City placed him on administrative leave and issued a Notice of Special Meeting expressly informing him that the Council would consider matters that could lead to termination. At the September 5 meeting—where he was represented by counsel—the Council read a detailed termination for-cause statement into the record, allowed his attorney to present argument, and then unanimously voted to terminate his employment. The process was thorough, transparent, lawful, and consistent with the employment agreement Krutz voluntarily signed, and the constitutional requirements governing public employee discipline.

Rather than accept that outcome, Krutz now attempts to repackage his disagreement with the Council's termination decision into a wide-ranging set of constitutional, statutory, contract, and tort allegations. But the FAC does not fix the fundamental deficiencies this Court already identified. For the reasons set out below, and consistent with the Court's prior ruling, every claim in the FAC should once again be dismissed—this time with prejudice because any further amendment is futile.



BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## II. STATEMENT OF FACTS

### A. Krutz's Employment with the City and the Events Leading to Termination.

Neil Krutz ("Plaintiff" or "Krutz") was hired as the City Manager for the City of Sparks ("Sparks" or "the City") on March 15, 2019. ECF No. 50, First Amended Complaint ("FAC") ¶ 13. Krutz and Sparks entered an employment contract which set forth the terms of his employment, compensation, and termination. *Id.* ¶¶ 13–20. In the employment agreement, Krutz contractually agreed to the process through which he could be fired for cause. *Id.* ¶ 19. The contract provides that "at any time and without prior notice, CITY, acting through City Council, may terminate MANAGER's employment for cause as is defined hereafter." *Id.* Thus, Krutz consented to his possible termination for cause "at any time and without prior notice" "through the City Council." *Id.* In the beginning, Krutz performed some tasks passably. *Id.* ¶¶ 76–80. Contractually, he was required to exercise the care, skill, and diligence of a prudent city executive. *Id.* ¶ 106. Yet the FAC identifies only a few isolated tasks he purports to have completed during his tenure, such as tracking staff time spent assisting Councilmembers with constituent concerns and reviewing a few travel costs for Councilmembers Dahir and Bybee. *Id.* ¶¶ 21–23, 29–35.

As 2022 drew to a close, more significant concerns about Krutz's judgment and leadership emerged. A sensitive personnel matter arose involving the Sparks Fire Chief, who faced potential criminal exposure. *Id.* ¶¶ 40–50, 53. Krutz unilaterally recorded a video message regarding the Fire Chief's resignation and distributed it through City email accounts to department employees, elected officials, and senior staff. *Id.* ¶¶ 48–49. Ultimately, the Fire Chief sued Krutz and the City for defamation related to Krutz's "announcement video" about him. *Id.* ¶ 54, 73–74. Because of Krutz's mishandling and poor decision to post a disparaging video, the City was forced to settle the lawsuit for $381,000.00. *Id.* ¶ 113. The video confirmed the Council's doubts regarding Krutz's ability to exercise care, skill, or sound judgment as City Manager. *Id.* ¶ 73.

### B. The City's Investigation into Krutz's Performance as City Manager.

Throughout April 2023, City Councilmembers and the Mayor met individually with Krutz to discuss concerns about his performance, communication, and handling of the Fire Chief situation. *Id.* ¶¶ 55–61. One meeting addressed whether his potential termination should be added



BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

to a future Council agenda. *Id.* ¶ 55. Ignoring all the negative feedback he received at these meetings, Krutz alleges that VanderWell would "not engage" with him and instead asked him to "retire or resign." *Id.* ¶ 56. Krutz somehow took this statement to mean that VanderWell was making a "reference to his age." *Id.* ¶ 57. The Councilmembers were seriously concerned. Dahir had heard enough that he solicited feedback about whether Krutz was hard to work with and if he was a "tyrant." *Id.* ¶ 58. There was also an anonymous survey circulated among City employees seeking input about Krutz's leadership. *Id.* ¶ 62. Mayor Lawson and Councilmembers Abbott, Anderson, VanderWell, Bybee, and Dahir each submitted their annual performance evaluations. Krutz's ratings were abysmal. The scores ranged from 0.0, 1.29, 2.714, 3.43, 3.57, with only one 4.0 out of 6.0. *Id.* ¶¶ 66–72, 79. The City Council no longer thought Krutz had the skills or attributes to be a competent city manager. *See id.* On April 24, the City sent written notice that the Council would formally consider issues relating to Krutz's character, professional competence, and alleged misconduct during his performance evaluation. *Id.* ¶ 64.

These matters came to a head at the public May 8, 2023 Council meeting. The Council discussed his performance scores, expressed concerns about his leadership and judgment, and allowed Krutz to speak. *Id.* ¶¶ 82–87, Ex. A. During the meeting, VanderWell expressed that she no longer had confidence in Krutz's abilities and that there was a lack of trust in his leadership. FAC ¶¶ 83–84. Krutz had made too many mistakes for a professional city manager. *Id.* ¶ 83. Bybee agreed there was "a 'lack of trust' in leadership based on the performance evaluation results." *Id.* ¶ 84. VanderWell criticized Krutz's "management missteps" and the fact that he opened up the City "for a huge lawsuit" through his errant video posting. *Id.* ¶ 81. Krutz narrowly escaped termination. The City Council "voted down the attempt to terminate" his employment contract without cause. *Id.* ¶ 86. Krutz was given another chance. Councilmember VanderWell requested that the June 12 agenda include an item seeking authorization for an independent investigation into negative employee-survey results, workplace-culture issues, and leadership problems. *Id.* ¶ 87. Although the Council did not terminate him without cause at that time, dissatisfaction with Krutz's performance continued.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

At the June 12, 2023 City Council meeting, VanderWell explained that she requested the agenda item because of questions about Krutz's "potentially toxic leadership, negative employee survey results, employee morale, gender bias, and whether [he was] exercising care, skill, and diligence of a reasonably prudence executive responsible for leading our city." *Id.* ¶ 89. Councilmembers discussed people who wanted to come forward to file HR complaints against Krutz but were scared that he would retaliate. *Id.* ¶ 90. VanderWell stated that she "cannot stand by and do anything else after she has been made aware of some potential issue by our current and former employees." *Id.* ¶ 89. As a result, Abbott made a motion to direct the hiring of a third-party investigator to investigate Krutz's performance, including his leadership, negative employee survey results, employee morale, gender bias, and whether the City Manager was exercising the care, skill, and diligence of a reasonably prudent executive. *Id.* ¶ 93. The motion was passed. *Id.* In other words, Krutz was given another last chance.

Later, on July 18, 2023, the Sparks City Council posted the agenda for the July 24, 2023 City Council meeting and included for discussion the retainer agreement of an investigator and the scope of the investigator's work. *Id.* ¶ 94.

### C. Krutz is Placed on Administrative Leave and Ultimately Terminated for Cause.

With the writing on the wall, the very next day (July 19, 2023), Krutz began peppering the City with various demands. He "filed a formal Human Resources Complaint against VanderWell, Bybee and Abbott for age discrimination, creating a hostile work environment and for retaliation." *Id.* ¶ 95. The complaint does not detail any factual bases. *See id.* That same day, Krutz also sent a "Preservation Letter" and a "FOIA" request to Sparks. *Id.* ¶¶ 96–97. He would go on to submit two more HR Complaints, more "preservation letters," a second "FOIA" request, and two (failed) Open Meeting Law Complaints with the Nevada Attorney General's Office. *Id.* ¶¶ 100 (HR Complaint), 105 (HR Complaint), 108 (preservation letter), 109 ("FOIA" request).

On August 25, 2023, the City Council held a special meeting to consider an amendment to Krutz's contract. *Id.* ¶ 99. At the end of the meeting, Mayor Lawson requested to place on the next meeting agenda an item to consider "termination of Mr. Krutz's contract." *Id.* Krutz again lashed

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

out and "sent a letter to Sparks Human Resources complaining of the retaliatory conduct by Mayor Lawson." *Id.* ¶ 100.

Near the end of August 2023, Krutz was placed on administrative leave, and his access to City systems was restricted. *Id.* ¶¶ 100–104. Consistent with NRS 241.033, on September 5, 2023, Krutz was "served a Notice of Special Meeting" stating that the Council would "consider Krutz's alleged misconduct, professional competence, or health which could potentially lead to his termination." *Id.* ¶ 102.

The Council convened the special meeting on September 5, 2023. *Id.* ¶ 106. During the meeting, Councilmember Anderson read a detailed termination for cause statement listing several grounds for removal, including Krutz's mishandling of the Fire Chief resignation, his distribution of the unauthorized video that exposed the City to litigation, leadership failures, intimidation of staff, and the negative impact these issues had on morale and public confidence in City government. *Id.* As explained below, Krutz was represented by counsel, who addressed the Council and raised objections to the evaluations and investigative process. After considering those arguments, the Council unanimously voted to terminate his employment for cause. *Id.* ¶ 107.

Krutz initiated this lawsuit shortly thereafter. Following the Court's order dismissing several claims with leave to amend, the ("Order" at ECF No. 49), Krutz filed his First Amended Complaint on February 6, 2026, continuing to assert the same core theories under federal and state law with insufficient facts. *See* ECF No 50.

## III. LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, the claim must be dismissed. *Twombly*, 550 U.S. at 570. At the motion to dismiss stage, the Court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

However, "the court is not limited to the four corners of the complaint." 5B Charles Alan Wright & Arthur Miller, Federal Practice & Procedure: Civil § 1357, at 376 (3d ed. 2004). A court "may also consider unattached evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (internal quotation omitted). Additionally, Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment[,]" but a "court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Here, the Court may properly consider the City Council meeting minutes at the motion to dismiss stage for two reasons. First, the minutes are incorporated by reference because the FAC discusses what occurred during the City Council meetings; the meeting's agendas and transcripts are central to Krutz's claims; and authenticity of the meeting agendas is unquestioned. Second, the minutes are subject to judicial notice under Federal Rule of Evidence 201 because they are official public records maintained on the City of Sparks' website and are therefore capable of accurate determination from a source whose accuracy cannot reasonably be questioned.[1] Accordingly, the

[1] The meeting minutes are available on the City of Sparks' website:

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Court may consider the City Council meeting minutes in evaluating the Defendants' Motion to Dismiss.

**IV. ARGUMENT**

Every claim in the FAC fails as a matter of law. First, the individual Defendants are entitled to qualified immunity for the federal constitutional claims because the FAC does not plausibly allege that Defendants violated any constitutional right under the Fifth, Fourteenth, or First Amendments, and, even if it did, Krutz identifies no clearly established authority that would have placed the alleged unlawfulness of their actions "beyond debate."

Second, Krutz's claim alleging a state constitutional violation against the City fails because even if the Court assumes a cause of action as set forth in the Court's Order (at 7), the City would still be entitled to common law immunities that were incorporated into the Nevada Constitution at the time of adoption.

Third, the remaining state law claims remain deficient for the same reasons the Court identified when dismissing the original complaint. Krutz still does not allege contractual performance or material breach; he offers only conclusory allegations of bad faith; he relies on the same speculative and age-neutral remark the Court has already rejected; he still fails to allege protected activity or causation under NRS 613.340; and the civil conspiracy claim continues to rest on conclusory assertions with no factual allegations of concerted action or any unlawful objective. In short, the FAC may add some volume, but not substance. Like the original complaint, the FAC should be dismissed but, this time, with prejudice.

**A. The Individual Defendants Are Entitled to Qualified Immunity (Claim 6).**

Krutz's sixth claim for relief alleges Section 1983 violations under the U.S. Constitution against the individually-named Defendants. FAC ¶¶ 168–73. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). State officials have qualified immunity from

---

https://www.cityofsparks.us/your_government/public_meetings/city_council.php. The City Council Minutes for the relevant time period are also attached as Exhibits A, B, and C.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

civil liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The principles of qualified immunity shield an offic[ial] from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244. It allows officials to make reasonable mistakes regarding the lawfulness of their conduct by excusing reasonable mistakes. *See id.* at 231.

Whether qualified immunity protects an official is a two-prong inquiry. First, the court assesses whether the plaintiff has alleged or shown a violation of a constitutional right. *Id.* at 232. Second, the court decides whether the right was clearly established at the time of the defendant's alleged misconduct. *Id.* The court may skip step one and address step two first. *Id.* at 236. Because qualified immunity "is an immunity from suit rather than a mere defense to liability," the United States Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (simplified). Therefore, it is appropriate to dismiss if, accepting Krutz's allegations as true, qualified immunity applies "based on the complaint itself." *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023).

***1. Krutz fails to sufficiently allege a deprivation of a constitutional right under the Fifth and Fourteenth Amendments.***

Krutz's first theory of federal constitutional liability rests on the Fifth[2] and Fourteenth Amendments. FAC ¶ 171. He alleges that, while under color of state law, Defendants deprived him of "both his property interest in his public employment and his liberty interest in pursuing his

2 Without any cited authority, Plaintiff's response to the first motion to dismiss stated that he was not asserting a "separate Fifth and Fourteenth Amendment claims." ECF No. 17 at 7, n.1. Instead, he claimed he is only asserting a Fourteenth Amendment claim that "incorporates the Fifth Amendment to apply to state actions." *Id*. However, without further elaboration from Plaintiff, the Fifth Amendment only applies to the federal government and does not apply to state governmental entities. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (abrogated on other grounds).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

regular occupation and profession without the due process of law." *Id.* "A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).[3] Due process requires that a plaintiff is given notice and the opportunity to be heard before he was terminated. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The Defendants provided Krutz with exactly that.

As the FAC concedes, Krutz received notice on multiple occasions that the Council was evaluating his performance and considering possible termination. Councilmembers met with Krutz individually in April 2023 to discuss concerns about his performance. FAC ¶¶ 55, 59–62. In fact, the meeting with Mayor Lawson and Councilmember VanderWell was arranged specifically to discuss placing "termination of Krutz's Contract on the City Council agenda." *Id.* ¶ 55. Shortly thereafter, the City sent Krutz a written Notice of Meeting advising that the Council would formally consider matters involving his performance. *Id.* ¶ 64. Additional notice followed on May 2, when Krutz received each Councilmember's written performance evaluations. *Id.* ¶¶ 66–72, 75.

At the May 8 meeting, the Council publicly discussed Krutz's performance issues and considered a motion to terminate him, putting him on direct notice—on the record—that termination was among the employment actions being weighed. *Id.* ¶¶ 82–87; May 8, 2023 Minutes, attached hereto as **Exhibit A**. When the HR Director presented the termination motion, Krutz addressed the Council and reiterated his desire to serve. *Id.* at 010. After hearing from the Councilmembers, the City Attorney then expressly informed Krutz that he could offer additional comments, call witnesses, or provide testimony. *Id.* at 013. Krutz declined, stating that he had nothing further to add before the Council proceeded to vote. *Id.*

---

[3] Krutz also fails to allege any protected liberty interest. FAC ¶ 171. A liberty interest is implicated only where the government's stated reasons for dismissal impair a reputation for honesty or morality, *Matthews v. Harney County, Or., School Dist. No. 4*, 819 F.2d 889, 891 (9th Cir. 1987), and only when the charges are so stigmatizing that they effectively bar future employment opportunities, *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981). Allegations of "incompetence or inability to get along with others" do not suffice. *Wheaton v. Webb–Petett*, 931 F.2d 613, 617 (9th Cir. 1991). The FAC pleads none of the required stigmatizing facts. It identifies only performance based criticisms: Krutz's handling of the Fire Chief resignation, his posting of the YouTube video, concerns about leadership and morale, and other job-related issues reflected in his evaluations. *See* FAC ¶¶66–72, 82–87, 102, 106. These allegations sound in poor judgment, not deceit or moral wrongdoing.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

The FAC also confirms that Krutz received additional notice of his employment status at the June 12, 2023, hearing. The Council addressed concerns regarding his performance and the issues that had arisen under his leadership. FAC ¶ 87; *See* June 12, 2023 Minutes, attached hereto as **Exhibit B**. Councilmembers discussed employee survey results reflecting concerns about Krutz's leadership and morale within the organization. *Id.* at 040. After that discussion, the Council voted to direct Human Resources to hire a third-party investigator to conduct an inquiry into Krutz's performance. *Id.* at 041.

Most importantly, before the September 5 meeting at which the Council voted to terminate Krutz, the City again provided written notice. FAC ¶ 102. The Notice of Special Meeting expressly advised that the Council would consider matters that could result in termination. *Id.* At the hearing, the Council provided a detailed explanation of its evidence when Councilmember Anderson read a termination-for-cause statement into the record. *Id.* ¶ 106. At that same hearing, Krutz—now represented by counsel—was given a full opportunity to respond. *See* September 5, 2023 Minutes, attached hereto as **Exhibit C**. His attorney addressed the Council at length, raising arguments regarding the performance evaluations and the bungled Fire Chief matter. *Id.* at 049. Krutz does not allege, and nothing in the minutes suggest, that Krutz's counsel was cut off, restricted, or prevented from presenting any argument. *See id.* Thus, after hearing the specific reasons the Council was considering termination but before the final vote, Krutz received an opportunity to be heard. *See Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (due process requires "an opportunity for a hearing before" deprivation of a significant property interest).

Taken together, these events demonstrate that Krutz received the process that the Constitution mandates. He had multiple rounds of oral and written notice, advance disclosures of the factual bases for the Council's concerns, meetings with individual Councilmembers, and opportunities to respond before his termination. Indeed, Krutz received as much, if not more, than the process to which he was contractually and statutorily entitled. FAC ¶ 19; *see also Las Vegas Sun, Inc. v. Adelson*, 2024 WL 1382842, at *22 (D. Nev. Mar. 31, 2024) (discussing cases holding that a party may contractually waive constitutional rights);[4] NRS 241.033. The FAC identifies no

[4] reversed on other grounds 147 F.4th 1103 (9th Cir. 2025).

procedural element that was missing. Nor does it connect any individual defendant to any specific denial of process.[5] Because the allegations, and the judicially noticeable minutes, demonstrate that Krutz received all the process he was due, the Fifth, Fourteenth Amendment, and Nevada Constitutional due process theories fail as a matter of law.

***2. Krutz fails to sufficiently allege a deprivation of a constitutional right under the First Amendment.***

The FAC again fails to plead a violation of the First Amendment. As the Court recognized in its prior ruling, when a public employee makes "statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." ECF No. 49, Order at 8:14–17; *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013).

The Court previously declined to dismiss the original First Amendment claim because it could not determine from the initial complaint whether Krutz's video was made pursuant to his official duties. ECF No. 49, Order at 8:19–9:2. Krutz argued that the Councilmembers' description of his "unauthorized online video" allowed an inference that they (Defendants) believed the video was outside his employment, ECF No. 17 at 10:24–27, but whatever the Councilmembers may have believed does not alter what Krutz now expressly pleads: that his termination was based on "true statements in a You Tube video *during the course and scope of his employment*." FAC ¶ 172 (emphasis added). By alleging that the video was made within the scope of his job, Krutz concedes that he did not speak as a private citizen—foreclosing any First Amendment protection.

Nothing in the FAC suggests otherwise: Krutz does not allege that the video addressed matters outside his professional responsibilities, that it was personal speech, or that it was shared in any context other than his official role. To the contrary, he alleges that the video concerned the Fire Chief's resignation and was sent to professional contacts. Because Krutz alleges only

[5] Krutz also does not allege how each Defendant deprived him of procedural due process. A complaint fails when a plaintiff "broadly alleges that Defendants violated his constitutional rights [and] fails to explain the involvement of each defendant with respect to the alleged constitutional violations." *Jenkins v. Bureau of Land Mgmt.*, 2024 WL 5200537, at *1 (D. Nev. Dec. 20, 2024) (citing *Clark v. Dzurenda*, 2020 WL 2926454, at *5 (D. Nev. June 3, 2020) ("For each defendant, [Krutz] must allege facts sufficient to show that the particular defendant violated his civil rights")).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

official-duty speech, the FAC fails to allege a First Amendment deprivation, and his § 1983 claim also fails on this independent basis.

***3. The alleged violations were not clearly established.***

Even if Krutz had plausibly alleged a federal constitutional violation, his claim would still fail because he cannot satisfy the second prong of qualified immunity. The inquiry asks whether the unconstitutionality of the specific governmental action was clearly established at the time it occurred. *See Andreaccio v. Weaver*, 674 F. Supp. 3d 1011, 1029 (D. Nev. 2023); *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotations omitted). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (quoting *Harlow*, 457 U.S. at 818).

Lower courts have been warned to avoid addressing qualified immunity at a high level of generality, and a defendant will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable. *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011). The plaintiff bears the burden of showing that the rights were clearly established, such that existing precedent "placed the statutory or constitutional question beyond debate." *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009).[6]

Krutz bears the burden of citing a controlling case clearly establishing that terminating a public employee for cause—after multiple rounds of notice and opportunities to respond—violates the First, Fifth, or Fourteenth Amendments where the City acted on performance based grounds. He cites none. And his first round of briefing only underscores the deficiency. In his earlier opposition to Defendants' first motion to dismiss, ECF No. 17, Krutz argued that his First

---

6 The Supreme Court has never explicitly held that any precedents other than its own can "clearly establish" law for qualified immunity purposes. *See D.C. v. Wesby*, 583 U.S. 48, 66 n.8 (2018); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021). Thus, this Court is limited to Supreme Court (not any circuit) precedent when assessing the clearly established law when Defendants allegedly acted. Even if the Court looks elsewhere, there is no governing circuit precedent either.

Amendment right was clearly established by *Karl v. City of Mountlake Terrace*, 678 F.3d 1062 (9th Cir. 2012). But even *Karl* defeats his position. There, the Ninth Circuit reiterated that, to claim First Amendment protection, a public employee must show that they "spoke as a private citizen *and not within the scope of [their] official duties as a public employee." Id.* at 1068 (emphasis added). Here, Krutz pleads the opposite: he affirmatively alleges that his statements were made "during the course and scope of his employment as City Manager." FAC ¶ 172. And as for his Fourteenth Amendment claim, Krutz argued only that that a public employee has a property interest in his employment if it is for a definite term. FAC ¶ 171.

The Councilmembers' conduct was objectively constitutional: the FAC alleges that Krutz distributed an unauthorized video in his official capacity, that the video triggered litigation and substantial cost to the City, and that the Council afforded him notice, evaluations, hearings, and multiple opportunities to respond before voting to terminate him. Nothing that Defendants can find in the case law would have put any reasonable official on notice that Krutz's termination would violate clearly established First, Fifth, or Fourteenth Amendment principles. Because the FAC fails to allege a constitutional deprivation and, in any event, Krutz has not identified controlling authority that clearly establishes a violation of his constitutional rights under these facts, the § 1983 claims against the individual Defendants must be dismissed on qualified immunity grounds.

**B. The City is Immune from Krutz's State Constitutional Claim (Claim 3).**

Krutz's third claim alleges a State constitutional violation against the City under the Nevada Constitution's due process clause, Article I, Section 8(5), which provides that "no person shall be deprived of life, liberty, or property, without due process of law." FAC ¶ 143. His sole allegation is that he did not receive a "fair hearing." *Id.* ¶ 144. This claim fails for several reasons.

First, assuming the existence of a cause of action under the Nevada Constitution,[7] the elements would likely mirror those of a federal Fourteenth Amendment due process claim. *See Universal Life Church Monastery v. Clark Cnty. Nevada,* 2021 WL 4268434, at *3 n.3 (D. Nev. Sept. 19, 2021) (citing *Rodriquez v. Eighth Jud. Dis. Ct.,* 102 P.3d 41, 48-51 (Nev. 2004)

---

[7] The Court previously found that Nevada law recognizes procedural due process claims under the state constitution. ECF No. 49, Order at 7 (citing cases).



BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

(procedural due process analysis same for federal and state constitution). As discussed above, a federal due process claim has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Armstrong,* 22 F.4th at 1066. As alleged, Krutz does not state plausible facts showing a procedural due process violation. *See supra,* Section IV(A)(1). Krutz merely alleges that he did not receive a "fair hearing" pre-termination. FAC ¶ 144. There are no plausible facts supporting this bare contention. Instead, his allegations show that the City complied with all procedural due process requirements. Krutz received written notice, (FAC ¶¶ 64), performance evaluations (¶¶ 66–69), an explanation of the evidence (¶ 106), and a public hearing where he could respond, Exs. A–B. Krutz received the exact process that he consented and agreed to in his contract. He also received all of the process is was due under Nevada law. *See* FAC ¶ 64; NRS 241.033. Because the pleadings affirmatively demonstrate that the City satisfied all procedural due process requirements, this claim fails.

Second, if the Nevada Constitution provides a cause of action *and* Krutz had plead a viable due process violation (he did not), the claim is independently barred by common law immunities that were incorporated into the Nevada Constitution at adoption. When the Nevada Constitution was ratified, government officials enjoyed an established common law immunity from civil damages for acts taken within the scope of their authority, unless their conduct was "manifestly or palpably beyond [their] authority" or taken in the "clear absence" of any legal power. *See, e.g., Spalding v. Vilas,* 161 U.S. 483, 498 (1896); *Bradley v. Fisher*, 80 U.S. 335, 351–52 (1871). Immunity attached for "action having more or less connection with the general matters committed by law to his control or supervision." *Spalding,* 161 U.S. at 498. Mere mistakes or errors interpreting laws did not dissolve the immunity. *Kendall v. Stokes,* 44 U.S. 87, 98 (1845). The Defendants' termination of Krutz was in connection "with the general matters committed by law to [their] control and supervision" and was not beyond or without authority. For these reasons, immunity forecloses any Nevada constitutional claim.

**C. Breach of Contract (Claim 1)**

Krutz's first state law claim for breach of contract fails because he does not plausibly allege either contractual performance or a material breach. Under Nevada law, a plaintiff must allege "(1)

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

formation of a valid contract; (2) performance or excuse of performance; (3) material breach by the defendant; and (4) damages." *Leach Logistics, Inc. v. CF USA, Inc.*, 751 F. Supp. 3d 1087, 1096 (D. Nev. 2024). This Court dismissed the original claim because Krutz failed to allege facts showing performance or breach, ECF No. 49 at 10, but the FAC has the same defects.

As to performance, the FAC again offers only conclusory statements—asserting that he "faithfully performed all contractual functions and duties"—while quoting the contract and City Charter, without linking any specific factual allegation to any enumerated contractual duty. *See* FAC ¶¶ 15–17, 123, 134. Under *Twombly* and *Iqbal*, such assertions are not well-pled facts. And many factual allegations, such as his mishandling of the Fire Chief resignation, the recording and distribution of the video, and employee relations issues, all reflect non-performance, not affirmative performance.

The FAC also fails to allege a material breach. Krutz attempts to convert the contract's Section 7's for cause termination provision into a contractual promise limiting the City's authority to terminate his employment. FAC ¶¶ 131–33. But Section 7 merely identifies circumstances permitting termination. FAC ¶ 19. It expressly authorizes termination for cause, and paragraph 106 of the FAC lists the City's multiple justifications. To plead breach, Krutz must allege that the City violated a contractual obligation—not simply that the City was wrong in finding cause. The "employer's decision to terminate must be consistent with its contractual prerogatives; the employment contract may subject an employer's termination authority to relevant policy provisions defining or limiting the term 'good cause,' or to defined procedures that the employer must follow prior to termination." *Southwest Gas Corp. v. Vargas,* 111 Nev. 1064, 1075-76, 901 P.2d 693, 700 (1995). But the employee ultimately has the burden of proving that the employer did not have a legitimate business reason for the termination. The issue, in other words, is whether the employer "reasonably believed" that the employee engaged in the misconduct. And, "absent substantial evidence of an express or implied agreement contracting away its fact-finding prerogatives to some other arbiter, the employer is the ultimate finder of facts constituting good cause for termination." *Southwest Gas Corp.,* 111 Nev. at 1075, 901 P.2d at 700; *see also, e.g., Sheridan v. Caesars Enterprise Services, LLC,* 2022 WL 2437527 (9th Cir. 2022) (affirming cause termination under

*Southwest Gas*, noting that "Caesars is the trier of fact that determines 'cause' under the terms of the Agreement. The Agreement does not contain any contractual provision delegating the 'cause' factfinding to any other arbiter. In fact, several of the cause provisions explicitly assign factfinding authority to Caesars. After a thorough internal investigation, review of photos and videos, and review of the police report, Caesars concluded [that the employee's] actions fostered an environment that promoted excessive alcohol consumption, interfered with her ability to lead her team, and hindered her ability to respond to a serious incident. Given [employee's] actions and the fact that Caesars' 'cause' determination was not arbitrary, capricious, or otherwise illegal.")

Thus, Krutz's assertion that "none of the identified justifications" occurred between May 8 and early September is irrelevant; his termination was based on earlier events: his handling of the Fire Chief resignation, the "unauthorized online video," and workplace intimidation. *Id.* ¶¶ 106, 129. The FAC does not allege that the City did not "reasonably believe" these events constituted "cause."

Krutz's reliance on Section 13(b)'s "best efforts to refer criticisms" clause is likewise unavailing. Although the FAC asserts that no substantive criticisms were provided (*id.* ¶ 132), it simultaneously pleads that Krutz received a notice of meeting regarding his character and competence (¶ 64), multiple individual meetings with Councilmembers (¶¶ 59–62), written performance evaluations (¶¶ 66–72), and public, substantive criticisms at the May 8 meeting (¶¶ 83–84). Councilmember Anderson's pre-vote statement further confirmed that "each council member previously expressed performance problems to Mr. Krutz," but he failed to improve. *Id.* ¶ 106. These allegations disprove any breach of Section 13(b). And regardless, any alleged lapse in providing criticism does not bar the City from exercising its contractual termination authority.

In the end, the FAC mischaracterizes the City's decision as unfair but does not specify a breach of any identifiable contractual obligation. Krutz disagrees with the City's decision but he still fails to allege facts showing Krutz's own contractual performance or any material breach by the City. Because the FAC continues to lack the required factual detail, the breach of contract claim remains insufficient and should be dismissed with prejudice.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**D. Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim 2)**

Kurtz also fails to state a claim for breach of the implied covenant of good faith and fair dealing. He must allege: "(1) the existence of a contract between the parties; (2) that the defendant owed a duty of good faith and fair dealing to the plaintiff; (3) the defendant breached his duty by performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied." *Perry v. Jordan*, 111 Nev. 943, 948, 900 P.2d 335, 338 (Nev. 1995). Where one party "deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels v. Butch Lewis Prods.*, 107 Nev. 226, 232, 808 P.2d 919, 922–23 (Nev. 1991).

The new allegations attempt to establish "bad faith" by listing a series of actions the City allegedly took, including: failing to interpret "for cause" fairly and contriving justifications for termination, failing to refer criticisms, soliciting complaints, investigating Krutz but failing to investigate the source of the anonymous survey, placing Krutz on administrative leave, restricting access to computer systems, failing to investigate Krutz's allegations, and allegedly retaliating after HR complaints. FAC ¶ 140. But none of these new averments plausibly allege conduct "unfaithful to the purpose" of the employment contract or show that "plaintiff's justified expectations were denied," and therefore do not cure the defects identified by the Court.

First, the FAC still does not identify what the "purpose" of the contract actually is, nor how the City acted contrary to that purpose. The contract's purpose, on its face, is the City Manager's employment subject to the City's authority to terminate with or without cause. The contract grants the City broad discretion to determine "cause" under Section 7, and Krutz alleges no facts showing that the City acted in a way unfaithful to the contract's structure or purpose. For example, reaching out to employees regarding their complaints and initiating an investigation into Krutz does not show that the City performed the contract in a manner designed to deprive Krutz of the benefit of the bargain. These actions also do not show that Krutz had any expectation beyond what is provided for in his contract, or that expectations were denied. Rather, these actions, as well as actions taken to place Krutz on administrative leave or investigate his performance, are actions contemplated by any employment agreement that includes a broad for-cause termination provision. None of the

identified actions contradict the contract's purpose. In fact, it's quite the opposite. The contract expressly provided for "failure to exercise the case, skill and diligence of a reasonably prudent executive . . ." so actions taken by the City to investigate the facts surrounding Krutz's actions are *in line* with the contract's purpose.

Second, the FAC once again relies on labels rather than facts. Assertions that the City "contrived," or "retaliated," merely restate Krutz's disagreement with the City's investigation into, and views of, his performance. *See* FAC ¶ 140. They do not allege facts showing the City acted for the purpose of frustrating the contract. Courts applying the implied covenant consistently require specific facts demonstrating a conscious, deliberate attempt to undermine the agreement. *See, e.g., Morris v. Bank of Am. Nevada*, 110 Nev. 1274, 1279, 886 P.2d 454, 457 (Nev. 1994) (finding allegations sufficient because they tended to show that the defendant "deliberately refused to live up to the spirit of its obligation"). The FAC still contains no factual allegation showing that the City acted with an improper motive designed to deny Krutz the benefits of his contract. Without factual allegations showing deliberate conduct designed to deny Krutz the benefit of his bargain, the elements for this cause of action are unmet and the implied covenant claim should be dismissed with prejudice.

**E. Age Discrimination Violation of NRS 613.330 (Claim 4)**

Nevada age discrimination claims brought under NRS 613.330 are analyzed under the same framework as federal ADEA claims. *Bullard v. Las Vegas Valley Water Dist.*, 2018 WL 715358, at *4 (D. Nev. Feb. 5, 2018). To establish a prima facie case, a plaintiff must allege that he: (1) is at least 40 years old; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and (4) was either replaced by a younger employee with equal or inferior qualifications or that there were circumstances giving rise to an inference of age discrimination. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). The plaintiff must also show that age was the but-for cause of the challenged action. *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012). This Court already held that Krutz's original allegations failed to allege facts giving rise to an inference of discrimination because a single remark by one councilmember was "too speculative" to support an inference of discriminatory intent. ECF No. 49, Order at 14:2–4.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

The FAC does not cure this defect. Although Krutz adds allegations that he was over 40, asserts satisfactory performance, and a younger individual later became City Manager, these additions do not supply the necessary facts connecting the termination decision to his age. *See* FAC ¶¶ 149–54. The age discrimination theory still rests entirely on Councilmember VanderWell's single comment that Krutz should "retire or resign" *Id.* ¶¶ 56–57, 148. But critically, that remark is not directly or obviously tied to age. "Retire or resign" can refer to a desire for leadership change, frustration with performance, or a preference that an executive step aside for reasons wholly unrelated to age. The Councilmember's statement does not mention age, "being too old," a generational preference, or any age-based stereotype. A single ambiguous phrase such as this one does not rise to an inference of discrimination. *See Nesbit v. Pepsico*, 994 F.2d 703, 705 (9th Cir. 1993) (explaining that the comment "we don't necessarily like grey hair" was ambivalent, not directly tied to termination, and "at best" weak circumstantial evidence of animus); *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990) (finding a reference to a "young man" to be insufficient and a "stray remark"). The remark here is even weaker—it does not contain any age-related word or reference.

But more importantly, regardless of what Krutz now says about the meaning of the comment, this Court has already decided that the remark is too speculative to raise an inference of age discrimination. ECF No. 49, Order at 13:7–13. None of the FAC's added allegations change the nature of the remark itself or supply corroborating age-related facts from other Councilmembers, HR staff, or anyone else involved in the termination decision. There is no tie between age and any of the termination reasons that the City actually articulated. Thus, Krutz cannot plausibly allege that his age, rather than disagreements over policy, performance, or the Fire Chief situation, was the determinative cause of his termination.

In short, the FAC still pleads no facts that give rise to an inference of age discrimination, and certainly no facts showing that age was the but-for cause of Krutz's termination. The claim therefore remains deficient for the same reasons the Court articulated when it dismissed the original complaint: a single, ambiguous remark—especially one not even explicitly tied to age—is far too speculative to support an age discrimination claim.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**F. Violation of NRS 613.340 for Retaliation (Claim 5)**

To plausibly plead retaliation, a plaintiff must allege facts showing: (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) the adverse action was caused by the protected activity. *Vasquez v. County of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003); *see also Pope v. Motel 6*, 121 Nev. 307, 312, 114 P.3d 277, 281 (Nev. 2005) (relying on Title VII cases to interpret NRS 613.340). As Defendants and this Court have explained, Nevada state law discrimination claims are "evaluated the same way as their federal analogs." *Bullard*, 2018 WL 715358, at *4*; see also Pope*, 114 P.3d at 311. The two types of protected activity for a retaliation claim are participation and opposition. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009). The claim here seems to rely entirely on participation, which involves filing a complaint, testifying, assisting or participating "in the machinery set up" to enforce the provisions of Title VII. *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997).

Similar to the first complaint, the FAC alleges that Krutz filed an internal HR complaint on July 19, 2023, and made multiple follow-up internal complaints in August 2023. FAC ¶¶ 95, 100–105. Yet, just like the original complaint, the FAC admits that Krutz did not file his Nevada Equal Rights Commission ("NERC") charge until April 7, 2024, nearly seven months after the September 5, 2023 termination. *Id.* ¶ 114. Importantly, the Court has already held that Krutz's internal HR complaints do not constitute protected activity because those complaints were not made "in conjunction with" or "after" any formal NERC or Equal Employment Opportunity Commission ("EEOC") complaint. ECF No. 49, Order at 15:17–16:11.

In *Slack v. United Airlines, Inc.*—the case cited in the Court's Order—the plaintiff claimed retaliation after he was terminated following internal complaints about workplace discrimination, but the court held those internal complaints were not protected activity because they were made during an internal investigation unrelated to any EEOC proceeding, and because the plaintiff's EEOC engagement occurred after the alleged retaliation. 2019 WL 1446970, at *5 (D. Nev. Mar. 29, 2019). That reasoning follows *Vasconcelos v. Meese*, which found that statements made "in the context of charges before the Commission" are protected, but statements "outside of that context are made at the accuser's peril." 907 F.2d 111, 113 (9th Cir. 1990). "Lower courts and the Ninth

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Circuit have subsequently interpreted *Vasconcelos* to mean '[t]he participation clause . . . applies only to EEOC proceedings.'" *Ward v. California Dep't of Corr. & Rehab.*, , 2016 WL 9724965, at *4 (C.D. Cal. Mar. 8, 2016) (quoting *Snider v. Greater Nevada, LLC*, 2009 WL 3319802, at *15 (D. Nev. Oct. 14, 2009)); *see also Greisen v. City of N. Las Vegas*, 251 Fed. App'x. 462, 463 (9th Cir. 2007) (holding that the plaintiff could not claim retaliation under the participation clause because she "did not participate in any proceedings concerning [her co-worker's] formal EEOC complaint").

That is exactly the situation here. Krutz was not participating in any NERC or EEOC proceeding at the time he made the internal complaints, and none of the accusations against him were "before the Commission." Because his internal complaints were not made "in conjunction with" or "after" the filing of an EEOC or NERC charge, they are not protected activity under NRS 613.340. ECF No. 49, Order at 15:17–16:11. The FAC's new assertions that internal complaints "constitute protected activity" are legal conclusions, not factual allegations, and do nothing to cure the defect. FAC ¶¶ 159–62.

Moreover, even if Krutz could state a prima facie case—which he cannot—the FAC itself lays out the City's "legitimate, nonretaliatory reason for the adverse employment action." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1106 (9th Cir. 2008). According to the FAC, the City found that Krutz mishandled the Fire Chief's termination; that his "unauthorized online video" exposed the City to expensive litigation; that he fostered an uncomfortable environment marked by intimidation and fear; and that his leadership failures undermined public confidence. FAC ¶ 106. These are legitimate, nonretaliatory reasons that defeat causation as a matter of law.

Ultimately, Krutz still has not alleged the indispensable first element of an NRS 613.340 claim: engagement in statutorily protected activity. His only alleged "protected activity" consists of the July and August 2023 internal complaints, which the Court has already held are insufficient as a matter of law because they were not filed "in conjunction with" or "after" a NERC charge. The FAC does not change this conclusion. Because the defect is incurable, the retaliation claim should be dismissed with prejudice for failure to state a claim.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**G. Civil Conspiracy (Claim 6)**

Krutz's final claim for civil conspiracy should also be dismissed. Under Nevada law, "An actionable conspiracy consists of a combination of (1) two or more persons who, (2) by some concerted action, (3) intend to accomplish an unlawful objective for the purpose of harming another, and (4) damage results from the act or acts*." Hilton Hotels Corp.*, 862 P.2d at 1210 (internal citations omitted). "When pleading a claim for civil conspiracy, a plaintiff must plead with particular specificity as to 'the manner in which a defendant joined in the conspiracy and how he participated in it.'" *Century Sur. Co. v. Prince*, 265 F. Supp. 3d 1182, 1194 (D. Nev. 2017), aff'd, 782 F. App'x 553 (9th Cir. 2019) (quoting *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984)). This Court has already held that Krutz "had not sufficiently pleaded either a 'concerted action' or an 'intent to accomplish an unlawful objective,'" and that his conspiracy allegations were merely "conclusory." ECF No. 49, Order at 17:17–22. Nothing in the FAC rectifies those problems.

The FAC strains to plead "concerted action," such as alleging that certain Councilmembers "engaged in conduct outside their official City positions to solicit complaints," that they "provided information" used to support an investigation, and that no basis for termination existed. FAC ¶ 175–77. But these statements remain entirely conclusory and repeat the same labels the Court already rejected. Simply asserting that the Defendants "agreed" or "solicited" complaints is not factual pleading of the concerted action element.

The FAC also fails to plausibly allege the element requiring an unlawful objective. The only objective alleged is the Council's decision to terminate Krutz for cause, yet the contract expressly authorizes termination either for cause or without cause. *Id.* ¶ 19. This contractual discretion renders implausible any theory that the Council conspired to accomplish a separate unlawful purpose. And although the FAC attempts to add more narrative detail, none of it ties any defendant to an unlawful agreement; it merely recounts policy disagreements, performance concerns, public comments, and internal oversight. The FAC alleges nothing more than Krutz's disagreement with the City's vote, and the Court has already rejected similar allegations as "conclusory." ECF No. 49, Order at 17:19–22. Because the FAC still lacks factual support and still identifies no unlawful objective that could

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

support a conspiracy claim under *Hilton Hotels*, the civil conspiracy claim should be dismissed with prejudice.

Finally, Krutz cannot overcome the intracorporate conspiracy doctrine. Under that doctrine, "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983); *S. Nevada Fire Prot. Inc. v. Clark Cnty.,* 2022 WL 19795807, at *2 (D. Nev. Dec. 19, 2022) ("district courts in this circuit have applied the doctrine with equal force to claims brought against employees of a single government entity").

Here, the Defendants are the City of Sparks and its Councilmembers. Krutz has not alleged that any Councilmember took actions for their own individual advantage. The City and all its residents received the same benefit from Krutz's termination. "Without specific allegations that each of them benefitted personally and acted outside the scope of their official duties, no claim for civil conspiracy may lie." *S. Nevada Fire Prot. Inc. v. Clark Cnty*., 2022 WL 19795807, at *3 (D. Nev. Dec. 19, 2022). Accordingly, the conspiracy claim is foreclosed by the intracorporate conspiracy doctrine and it should be dismissed with prejudice.[8]

## V. CONCLUSION

For all the reasons set forth above, the First Amended Complaint should be dismissed. Moreover, because the Plaintiff has already amended his complaint with leave of Court and the defects in each claim remain and are incurable, the Court should dismiss the First Amended Complaint in its entirety and with prejudice. *See Novak v. U.S.*, 795 F.3d 1012, 1020 (9th Cir. 2015) ("Futility alone can justify a court's refusal to grant leave to amend.").

---

[8] To the extent Krutz's civil conspiracy is based on a constitutional claim, which has not been plausibly alleged, he has the burden to overcome qualified immunity for the federal claims by showing the constitutional right allegedly violated was clearly established. *See Lobato v. Las Vegas Metro. Police Dep't,* 22-16440, 2023 WL 6620306, at *2 (9th Cir. Oct. 11, 2023) (stating Lobato has not identified any case demonstrating that it was clearly established that the intracorporate-conspiracy doctrine does not apply in the context of a § 1983 conspiracy claim). Similarly, Krutz is required to show that the underlying Nevada constitutional violation is not barred by the common law immunity discussed above and that a conspiracy claim is available under the state constitution. *See id*.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Dated this 6th day of March, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: */s/ Jordan T. Smith*
JORDAN T. SMITH, ESQ., Nevada Bar No. 12097
jtsmith@bhfs.com
BRIANNA SMITH, ESQ., Nevada Bar No. 11795
bsmith@bhfs.com

*Attorneys for Defendants*

**INDEX OF EXHIBITS**

| Ex. | Description | Page No. |
|---|---|---|
| A | Sparks City Council Meeting Minutes for May 8, 2023 | 001 – 022 |
| B | Sparks City Council Meeting Minutes for June 12, 2023 | 023 – 044 |
| C | Sparks City Council Meeting Minutes for September 5, 2023 | 045 - 052 |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101